Before STATE INDUSTRIAL BOARD, Respondent.

In the Matter of the Claim of JAMES A. SCANLON, Respondent, for Compensation under the Workmen's Compensation Law, *v.* THE HERALD COMPANY, Employer, and ÆTNA LIFE INSURANCE COMPANY, Insurance Carrier, Appellants.

Third Department, May 3, 1922.

**Workmen's Compensation Law — injury not arising in course of employment — employee injured by fall in street while returning to work after lunch at home — employee worked while at home — employer knew about but did not direct employee to take his work home.**

An injury does not arise in the course of the employment where it appears that an employee, with the knowledge of but not by the direction of his employer, took work to his house when he went home to his lunch and worked thereon while at home and that on his way back to his place of employment he fell in the street and received the injury for which he claims compensation.

KILEY, J., dissents, with memorandum.

APPEAL by the defendants, The Herald Company and another, from an award and decision of the State Industrial Board entered on the 23d day of April, 1921.

*William H. Foster,* for the appellants.

*Charles D. Newton, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

H. T. KELLOGG, J.:

The claimant has obtained an award for an injury to his arm which he sustained from a fall while walking in a public street. He was employed by a newspaper corporation as its mechanical superintendent. It was his duty to lay out all advertising matter

received for printing and give directions to the pressmen in relation to the same. On the day of the accident he began his work at the plant of his employer at one o'clock P. M. He continued to work until five minutes before five, when he left for his home to get supper, carrying with him a large amount of advertising copy. He arrived at his home at about five minutes after five. While waiting for supper to be served he prepared the advertising matter for use next day. This work consisted principally of marking upon the copy directions as to the size of type to be used in printing the different lines. He was engaged in this work for about an hour, and then had his supper. At about six-forty P. M. he started to walk to the plant of his employer to resume his labors. While on his way he slipped and fell, receiving the injury in question. On at least four occasions during every month it had been his practice to carry copy to his home when going to his evening meal. It was equally his practice to lay out the copy for the printers while at home upon such occasions. This practice was known to his employer, and permitted, but not directed by it. We do not think that the case is comparable to *Matter of Redner* v. *Faber & Son* (223 N. Y. 379). In that case an award to an employee who was injured upon a street while going, under directions of his employer, from one factory to another, which were both managed by his employer, was sustained. The court quoted with approval a statement made in *Dennis* v. *White & Co.* (L. R. [1917] App. Cas. 479) which is as follows: " The use of the streets by the workman merely to get to or from his work, of course, stands on a different footing altogether, but as soon as it is established that the work itself involves exposure to the perils of the street the workman can recover for any injury so occasioned." In going home to supper or in returning to the plant of his employer from his home after supper the claimant was serving his own personal ends, and was not in the course of his employment. (*Matter of McInerney* v. *Buffalo & Susquehanna R. R. Corp.*, 225 N. Y. 130; *Matter of Clark* v. *Voorhees*, 231 id. 14.) The accidental injury received by claimant was, therefore, not within the coverage of the Workmen's Compensation Law.

The award should be reversed and the claim dismissed.

All concur, HINMAN, J., with an opinion, except KILEY, J., dissenting, with a memorandum.

HINMAN, J. (concurring):

In my judgment there should be a reversal. The accident did not arise out of claimant's employment. The claimant admits that the primary reason for going home was to get his lunch. He

says, " I can get a street car at five o'clock easier than at six o'clock." When asked, " There is nothing compulsory about your taking this work home? " he says, " Yes, or I would lose my lunch." When asked, " You could do it at the office? " he says, " But I would lose my lunch." In answer to the question, " If you went back to the office and did the work you did home, how long would it take you? " his answer was, " The same length of time."

The employer's general manager says: " He might have taken it back to the office,— in that case he would have missed a meal and be forced to eat it down town instead of going home." His employer knew that he took work home and that there were other employees who did the same thing. The general manager testified " there are a number of employees who do work at home — all that we require is that the men do their work — if a man doesn't do it we fire him." Claimant says he was told he could use his own judgment and get the work done. There were times when claimant would collect advertising copy from the patrons of his newspaper on his way home to lunch but on the night in question he says: " I collected it [the copy] at the office and took it home and prepared it."

The question before us cannot be decided upon the basis of what he might have done on other occasions in the way of collecting copy from advertisers while out for lunch. The question is, what was he doing that night? Of course he had to get the work out for the night crew, but the accident did not arise out of his having to do that work. It arose out of his doing it that way and the method was adopted by himself to give him a more satisfactory meal at home. The method served him. His employment did not require it. He had no set hours. He simply had to get the work ready in time to get the edition out. The employer was satisfied with the method but did not dictate it expressly or impliedly. It was not a condition, or an obligation, or an incident of the employment in any direct or proximate way. It flowed directly from an act of his own, prompted by a desire to serve his own personal comfort or his own physical well-being. He preferred to lunch at home. If he had gone to lunch without the work in his possession there would be no question but that he was not covered. When he put the work in his pocket and went home for lunch to get a good meal, doing part of his work at home instead of getting a quick lunch nearer the plant and then returning to the office to complete his work, I fail to see how any different principle can be applied. His method of getting lunch simply extended his journey on the street and prolonged his absence from the office. He had to come back to the office in either event. It was not any more an

errand of the master. His exposure to the perils of the street was no different in kind and was prompted by the same motive. In either event the purpose of his going home was to get his lunch. If he took the work home it was an incident of his own convenience and not an incident of his employment. Therefore, his injury did not arise out of his employment and the award should be reversed.

KILEY, J. (dissenting):

Notwithstanding the apparent holding in *Matter of Clark* v. *Voorhees* (231 N. Y. 14), which comes the closest to this case of any I can find, I think this award should be affirmed. It is clear that the Syracuse Herald Corporation is a union plant; if it was not the claimant could not work there. The hours are eight each day in the twenty-four. That plant has two heavy advertising days in each week. Claimant was superintendent, mechanical superintendent and foreman of the advertising department. He had to get ready and lay out, on the days in question, all of the work to keep the night shift busy. To facilitate this work and be able to get his dinner at home and comply with the rule of the union and do his work, he was permitted and it was understood between the general manager of the whole works and the claimant, that he could take some of his work home and get it ready for the night crew during this hour which it took him to go there. He had but one-half hour for lunch under the general contract of hiring. The general manager swore that a man had to do his work on time or he would get fired. Claimant swore he did it " for the convenience of the office." He further testified: " I am responsible for the room and for the papers catching the trains, the employer is not, he holds me responsible, and I facilitate the work so we can catch and make these trains." The general manager testified: " He has no hours, merely a question of his work; his duties took him all through the building, and he very often takes home advertising to lay it out at home and bring it down to get the night crew started, so we can make our first edition in the morning." " Q. Is the nature of his work such that it makes it necessary for him to perform his duties in that way? A. Very often. Q. When he is at his home for any purpose and has particular work to perform, do you consider that he is in your employ at that time? A. I do. Q. And his work is of such a nature that it makes it necessary for him to do that work at home? A. Yes. Q. And you feel he was preparing that at his home that night? A. Before a heavy day he always does that, a day in which we carry a large amount of advertising." The 3d day of February, 1921, was one of those heavy advertising days; he had taken this work home and

did what was necessary to prepare it for the night crew; he was returning with that work to give it to the night crew, when he fell on the way back, and broke his left arm.   He swears he was in the employ of the company.   The general manager says so. We must infer that his compensation, in absence of evidence to the contrary, was figured in the premium paid for compensation insurance.   The carrier is the only one who objects to this construction of the contract.   There is evidence to sustain the award. It is much stronger in that regard than the *Clark Case (supra).* I dissent and favor affirmance, with costs.

Award reversed and claim dismissed, with costs against the State Industrial Board.