Before STATE INDUSTRIAL BOARD, Respondent.

EMIL A. FREITAG, Respondent, *v.* AMERICAN RAILWAY EXPRESS COMPANY, Appellant.

Third Department, May 8, 1924.

Workmen's compensation — injury arising out of and in course of employment — claimant, express messenger on train composed of express and refrigerator cars only, jumped from car as it passed through Albany station and was injured — claimant's car was sealed at Utica and he had no further duty to perform except to check out at Albany — Albany express cars were usually taken to Rensselaer yards and then returned — claimant did not violate rule of employer that messengers in charge of value cars should not leave them — said rule not applicable to messengers in charge of baggage express cars — claimant did not change or leave regular run without permission when he left car before it reached Rensselaer yards — practice, well known to employer, was for messengers on claimant's run to leave car at Albany station — injury arose out of and in course of employment.

The claimant, an express messenger in charge of a baggage express car in a train composed of express cars, refrigerator cars and a coach, and running from Buffalo to Albany, was injured when he jumped from the moving train near the Albany station. The claimant's car was sealed at Utica and he had no further duty to perform except to check out at the employer's office in Albany, and while the train was scheduled to run through the Albany station and into the Rensselaer yards and the messengers ordinarily accompanied the cars to that point and then walked back a distance of about two miles to the employer's office, there was a well-known practice by messengers to leave the train near the Albany station on the particular run which the claimant was on at the time of the injury.

*Held,* that the claimant was not bound by a rule of the employer which forbade messengers in charge of cars having safes, money and valuables, from leaving their cars without permission and unless another employee was assigned to relieve them, since the car of which the plaintiff had charge did not contain valuables, nor did claimant violate another rule of the company which forbade a messenger from changing off or leaving his regular run without permission from the superintendent, for that rule applies to a messenger going from one run to another, and furthermore, the claimant had the permission of the employer to leave the car at the place where he did leave it arising out of a long-continued practice known to the employer and permitted by it to continue.

The claimant did not step out of his employment when he left his car to go to the Albany station by a route other than that usually followed by express messengers, since the employer had permitted this practice to continue for a long time, and, therefore, the claimant received an accidental injury arising out of and in the course of his employment.

H. T. KELLOGG and McCANN, JJ., dissent, with opinion.

APPEAL by the defendant, American Railway Express Company, from an award of the State Industrial Board made on the 19th day of June, 1923.

The employer, the American Railway Express Company, is a self-insurer. The claimant was an express train messenger. He had worked for this employer and its immediate predecessor about twenty-four years, as an express messenger. He knew his duties and the custom and practice on the part of the messengers with the apparent approval of the employer. He jumped from an express car at the Livingston avenue bridge (the correct name is the Montgomery street bridge). The train was moving eight to ten miles an hour at the time. He fell, his legs were thrown under the train and crushed and both legs have been amputated at or below the knee. He was earning $159 per month. His duties were to receive and deliver express at stations; to sort the express received and place it conveniently for delivery at the station to which it was destined. Rule 315, under the heading, " Sealing, Care and Protection — Money and Valuables," provides, " Messengers Must Not Leave Their Cars or Safes for any cause, unless an employee of the Company known to them is assigned by the agent to relieve them. Agents will, when necessary, relieve messengers at stations for meals, or delegate some reliable employee known to messenger for that purpose." Rule 21, under the heading, " Instructions to Messengers — General," " Leaving Regular Runs," provides that messengers must not change off or leave their regular runs without permission from the superintendent, or unless ordered by route agent or agent at end of route. There were twelve or fifteen express cars, other than refrigerator cars on this train and four messengers. The claimant was not in charge of any value car. Claimant's run was from Buffalo to Albany, his train stopping at Rochester, Syracuse, Utica and Albany. The train ran daily from Buffalo to Albany, reaching Albany when on time about ten-thirty P. M., and on all days except Monday the messengers returned, leaving Albany the following morning about nine o'clock. But on Monday there was no express train going west on which these messengers worked and they dead-headed from Albany to Buffalo. The train was made up of refrigerator cars, " value " cars and baggage express cars. The " value " cars carried money and valuables; the baggage express

cars did not.   The first stop of the train after leaving Utica was in the Rensselaer yards opposite Albany, where the cars destined for Albany station were cut out and later shunted back to the Albany station.   When the train was on time the express messengers ordinarily remained with the train into the Rensselaer yard; if the Albany cars were to be immediately taken across to the Albany station, they rode with the cars; if not, they walked from the yards to the station, a distance of approximately two miles.   They were required to have their time cards checked by an agent of the company in the Albany station.   This checking of the time card was the last act of the run.   The express cars were sealed when leaving a station and remained sealed until they arrived at the next station where express packages were to be delivered or received.   The Albany cars upon this train were sealed at Utica and remained sealed until they reached the Albany station.   The seals were not broken in the Rensselaer yard.   The services of an express messenger on this run were completed when his cars were sealed at the Utica station, except to be checked out, unless he was required under the rules to remain in his car.   When the Sunday night train was late, messengers frequently alighted from the train at the Livingston avenue bridge, which was approximately one-fourth of a mile from the Albany station, and walked from this point to the station to have their time cards checked. Witnesses testified that this had frequently been done by the claimant and by other messengers.   This train crossed the Hudson river on the upper bridge, not far from the Livingston avenue bridge. Occasionally and particularly when the draw of the river bridge was open to permit boats to pass, the train stopped at the Livingston avenue bridge and frequently had slowed down there.   Messengers also at times left the train at the Sand Lot, just across the Hudson river bridge.   There was a coach attached to this train and there is testimony that these messengers left this coach at the Livingston avenue bridge when the express agent was in the coach with them and that no objection had been made to this practice.   The express agent had charge of the train, occupying a like position with a con- ductor on a passenger or freight train; and the express messengers during the run were under his orders.   The express agent had authority to permit messengers to ride in express cars, other than those in their immediate care, or in the coach.   By permission of the agent, on the run in question, claimant had ridden with a messenger named Jones from Syracuse to Utica; and, after the cars were sealed at Utica, he continued in the car with Jones, the cars in his control being sealed.   As he approached the Livingston avenue bridge, he opened the front door on the right-

hand side of the car, Jones standing in the rear door on the same side; he asked Jones to hand him his bag and he descended on the ladder on the side of the car. Jones warned him not to jump; still he jumped and received his injuries. This train was very late. It should have reached Rensselaer at ten-thirty on Sunday night, but did not arrive until eleven Monday morning, so that claimant could not return on the train usually taken by the messengers dead-heading to Buffalo. He desired to take the train leaving at twelve-fifteen.

*Edward V. Conwell,* for the appellant.

*Carl Sherman, Attorney-General [E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

VAN KIRK, J.:

The question presented is whether or not the accidental injury arose out of and in the course of claimant's employment; that is, whether or not the claimant stepped out of his employment when he left his train to go to the Albany station to have his time card checked by a route other than that usually followed.

Rule 315, forbidding messengers to leave their cars or safes for any cause unless an employee is assigned by the agent to relieve them, is held by the Industrial Board not to apply to this claimant at the time he alighted from the car. We think this was a correct construction of the rule. It applies to cars having safes, money and valuables. Claimant did not have charge of any car carrying this kind of express. Four messengers could not at one time remain physically in twelve or fifteen cars. It seems very plain that this rule could not have required messengers, having charge of other than " value " cars, to remain in their cars. If such were the intention an impossibility was required. The wording of the rule and its heading favor this construction. The Industrial Board has also found that, by leaving the train, the claimant did not change off or leave his regular run without permission. That rule apparently applies to going from one run to another. Messengers must take the regular runs to which they are assigned and are not at liberty to choose for themselves another run. In this sense this rule does not apply to claimant or his acts in this case. Also he had the permission of his employer, evidenced by a practice followed without rebuke.

If we are correct in our understanding of the duties of a messenger and of the construction of these rules, the claimant, after he left Utica, had performed all the duties he was called upon to perform for the company, except to check out at the Albany station. Had he gone on to the Rensselaer yards in the mean time he would

have performed no service for the company and no act in its interest. He had nothing to do with the express or the express cars in the Rensselaer yards, or with taking them to the Albany station, and no duties to perform in the Albany station in respect to an express car or its contents. Had he gone to the Rensselaer yards and, when getting off there before the train stopped, had fallen and been injured, his right to compensation would hardly be questioned. These circumstances corroborate the testimony in the case that frequently messengers did leave the train at the Livingston avenue bridge on the Sunday run with the consent of the express agent in charge of the train, who was the authorized representative of the employer, having control of the messengers.

The Industrial Board has found that the claimant alighted from the train for the purpose and with the intent of going to the office of his employer in the Albany station to report, and procure the signature of his employer's agent to his time slip, which act was required by the employer before he returned to Buffalo; that this was an incident of his employment. We think there is evidence to sustain this finding. Claimant was still within the time of his employment and was going to perform his last duty on this run. He did not go, it is true, by the usual route, but, in so doing, he did not in our view step out of his employment. He violated no rule which applied to him; he followed a course which often had been followed by messengers arriving late on this train and the use of which his superior had tacitly at least approved. In *Hanifee* v. *U. S. Aluminum Co.* (206 App. Div. 785) the claimant had parked his car in the yard of his employer. There was a rule that employees, when leaving the premises, should pass through the checking out house by going in the back door and out the front door. The claimant went in the back door and also went out the back door; this being more convenient to reach his automobile. While crossing a railroad track in the yards of the company, he was killed by a locomotive. It appeared that some of the employees, regardless of the rule, had been accustomed to go out through this rear door. An award was made and this court affirmed it without opinion. Claimant's injury in the instant case arose from a risk connected with his employment. He could not leave for his home until he was checked out. He had to get off the train. His injuries were received while doing a duty he was required to perform and as a natural incident of his employment.

The award should be affirmed, with costs to the State Industrial Board.

All concur, except H. T. KELLOGG, J., dissenting, with an opinion in which McCANN, J., concurs.

H. T. KELLOGG, J. (dissenting):

A master owes the duty of providing a servant with a means of egress from his place of work which is reasonably convenient and safe. When a servant, with such a means provided, makes his exit by an unsafe means of his own choosing, not provided for or sanctioned by his master, no injury which follows proceeds from a risk of his employment. The claimant, an express messenger, disembarked from an express car of a train upon which he was employed, when the train was in rapid motion. He fell to the ground and rolled under a wheel of the train with the result that both his legs were severed from his body. The place of his disembarkation was not the place designated by his master for the termination of his journey. Had he remained upon the car until it came to its regular stopping place he would not have been carried beyond his destination as fixed by his employment. It seems to me, therefore, that the claimant's employment did not create the danger out of which disaster came to him and that his accidental injury did not arise out of his employment. This is not a case of a negligent performance of a servant's duty. It is rather a case of terminating an employment by a means and method not furnished by the employer.

MCCANN, J., concurs.

Award affirmed, with costs in favor of the State Industrial Board.