H. T. BURCHETT, Respondent, v. ANACONDA COPPER
MINING COMPANY, Employer, and AETNA CASU-
ALTY & SURETY COMPANY, Surety, Appellants.

[283 Pac. 515.]

E. B. Smith, for Appellants.

R. J. Dygert, for Respondent.

BUDGE, C. J.—Respondent received a personal injury by accident while in the employ of the Anaconda Copper Mining Company at Conda, on March 14, 1927, and subsequently filed a claim for compensation with the Industrial Accident Board. Evidence in support of and in opposition to the claim was heard before one of the board members who thereafter made written findings and award in favor of respondent, which were ordered filed in the office of the Industrial Accident Board "and hereby approved and confirmed subject to the right of review by any party thereto." On petition for review by appellants, employer and surety, the decision of the board member hearing the cause was set aside and the application of respondent for compensation denied. Respondent then appealed to the district court, where the findings of the board on review were set aside and those made by the board member originally hearing the cause reinstated as findings of the district court. The appeal to this court is taken by the employer and surety from the judgment of the district court awarding compensation to respondent.

It is well settled that on appeal from a decision of the Industrial Accident Board the court is limited to a review of questions of law. (C. S., sec. 6270; *In re Hillhouse,* 46 Ida. 730, 271 Pac. 459; *Kaylor v. Callahan Zinc-Lead Co.,* 43 Ida. 477, 253 Pac. 132; *Johnston v. White Lumber Co.,* 37 Ida. 617, 217 Pac. 979.) As said in *Ybaibarriaga v. Farmer,* 39 Ida. 361, 369, 228 Pac. 227, 229:

"It is the duty of the industrial accident board to find and determine the facts which the district court on review of an award may not disturb and must accept as final, provided such findings are supported by competent or sub-

stantial evidence, and it is within the power of the court to review any legal conclusion found by the board upon the evidence, and in doing so it may consider the evidence adduced before said board, its competency, relevancy and materiality, to determine whether or not such evidence sustains the findings of the board, or whether or not said board has made a proper application of the law to the evidence. In cases where the evidence is conflicting, the findings of the board are binding upon the court and cannot be disturbed by it, provided there is competent evidence to support them. There must be some competent evidence to support the findings and decision, and if such findings and decision of the board are clearly unsupported as a matter of law it will be within the province of the court to set aside said findings and decision and render judgment accordingly. In cases where the evidence is not conflicting and not in dispute, . . . . the application of the law to such undisputed evidence raises a question of law, not of fact.''

The district court, therefore, has no power or authority to alter or disturb the findings of fact of the Industrial Accident Board when they are supported by competent or substantial evidence, but may review the legal conclusion drawn therefrom in determining whether or not the board has made a proper application of the law to the evidence, provided there is no substantial conflict in the evidence. The district court in the instant case erred in assuming to make findings of fact, adopting as its findings those made by the one member of the Industrial Accident Board, as there is competent and substantial evidence to support the findings of fact made by the Industrial Accident Board on review. There is no material or substantial conflict in the evidence such as to make the findings of the board final and conclusive for all purposes, and it remains to be seen whether the application of the law to the evidence supports the award of the district court, or the decision of the board that the evidence did not justify an award of compensation. The error of the district court mentioned

would not be sufficient reason to reverse the judgment if the conclusion be that the evidence does not support the decision of the board denying compensation but justifies the judgment of award; it being within the province of the court under the circumstances latterly mentioned to set aside the findings and decision and render judgment accordingly. (*Ybaibarriaga v. Farmer, supra.*)

We shall set out in substance the material findings of fact of the Industrial Accident Board on review, as a fair statement of the evidence, for the purpose of determining whether or not, as a matter of law, the injury sustained by respondent was "by accident arising out of and in the course of" his employment, as controlling the question of his right to compensation.

On March 14, 1927, and for some time prior thereto respondent was and had been in the employ of the Anaconda Copper Mining Company at Conda, working underground and within the mine of the company as a track foreman and laborer. His regular hours of employment were from 8 o'clock in the morning to 5 o'clock in the afternoon, but pursuant to a custom sanctioned by the company, respondent went to work in the mine a few minutes before 8 o'clock and quit work for the day at about ten minutes before 5 o'clock. About a quarter of a mile from the mine were bunkhouses and boarding-houses provided by the company for the convenience of its employees, and respondent lodged at one of the bunkhouses. A road and board walk leading to and from the mine and the vicinity of the bunkhouses were the main traveled ways. The board walk was built by the company for the convenience of its workmen and others having occasion to travel on foot to and from the mine, and while both the road and walk were used by workmen, the walk was used to a somewhat greater extent by pedestrian traffic than was the road. A number of footpaths also led to and from the mine and were used by workmen. They had the option of choosing any or either of the paths or ways in going to or from their work, as suited their convenience. The employees of the company, including re-

spondent, were requested each day to make out a "time distribution card," as to show what kind of work they had performed during the day, such cards to be placed in the bunkhouses; and each employee, including respondent, made out such a card each day after work hours or before returning to work the next morning and deposited the same in boxes provided therefor in the bunkhouses. Respondent was not paid by the company after his day's work had been completed at the mine for the day at or near 5 o'clock P. M., nor was he paid for the time consumed by him in traveling from the mine to the bunkhouse where he resided after his shift at the mine had been completed, nor for the time consumed in making out the "time distribution card." The company did not specify any particular time for filling out the card for each day's work but left this matter entirely to the convenience of its employees, to be attended to at any time before returning to work the next morning. As a matter of custom and practice this requirement was attended to by respondent, as well as other workmen, at any time during the evening, either before or after he had eaten his supper or attended to other personal duties or business, or before he returned to work the following morning. On March 14, 1927, respondent completed his day's work in the mine, quitting as usual at 10 minutes before 5 o'clock, and started toward the bunkhouse where he resided. He descended the flight of steps leading from the mine to the board walk and the road and chose to use the walk as his pathway in traveling to the bunkhouse. The walk was slippery by reason of some snow and sleet then upon it, and he had reached a point on the walk about thirty feet from the foot of the flight of steps and about 450 feet from the portal of the mine, when he slipped on the walk and fell, in such a way as to break his right femur (thigh-bone). At the time of the happening of the accident it was about 5:05 P. M., or about 15 minutes after respondent had completed his work for the day at the mine.

That portion of the evidence relating to the duty of respondent to fill out a time-card and deposit the same in the bunkhouse, after finishing his day's work at the mine and before returning to work on the succeeding day, is not of controlling importance as a factor to the ultimate conclusion to be drawn from the evidence as a whole, although there is no question of it being a requirement exacted by the company. Nor is the fact that the board walk upon which respondent sustained his injury was not the only means used in traversing to and from the mine and the bunkhouse of any particular consequence, when it is noted that the walk was one built by the employer on its premises for the convenience of the workmen and admitted to have been used to a greater extent than other ways. The precise question is whether the injury to respondent while on the board walk, immediately after he had left his work in the mine and while on his way to the bunkhouse—such walk, as stated, having been constructed by the employer on its premises for use by its employees—was an accident arising out of and in the course of his employment.

By the great weight of authority injuries sustained by an employee upon premises owned or controlled by his employer, are generally deemed to have arisen out of and in the course of the employment. (Annotation, 49 A. L. R. 426–436 (6).) It has been said that the English cases, due to their clarity and the fact that they constituted original sources of interpretation at the adoption of our law, are entitled to great weight. (*McNicol's Case,* 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, 4 N. C. C. A. 522.) And in *Longhurst v. John Stewart & Son, Ltd.,* 2 K. B. 803, 32 T. L. R. 722, W. C. & I. Rep. 292, 9 B. W. C. C. 605 (affirmed 1917 App. Cas. 249), it was observed by Lord Cozens-Hardy:

"I think two propositions are established by the authorities: (a) The employment of a workman does not begin until he has left a public road, and it does not end until he has reached a public road. While on the road, he is exercising his right as a member of the public, and not any

right arising out of his contract of employment. (b) When the workman is on the employer's land, he would be a trespasser, but for the contract of employment, and he is within the protection of the Act, although the accident may happen when he is not actually at work, but is only going to or returning from his work.''

In *Bountiful Brick Co. v. Giles,* 276 U. S. 154, 48 Sup. Ct. 221, 222, 72 L. ed. 507, the supreme court of the United States held that liability is constitutionally imposed under the state compensation law (Utah) if there is a causal connection between the injury and the employment in which the employee was then engaged, substantially contributing to the injury. Further:

''And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance.''

The facts in *Walker v. Hyde,* 43 Ida. 625, 253 Pac. 1104, were such as not to make that decision control the holding herein. There, the workman was employed as a piece worker, at the time of the injury was completely away from the scene of his employment, and the injury was sustained when he attempted to get on a truck—wholly foreign to any exposure occasioned by his employment.

In determining questions of this kind, each case must be decided with reference to its own attendant circumstances; and under a liberal construction of the Workmen's Compensation Act, to effectuate its intent and purpose, we are of the opinion that the findings in this record are such as to satisfy the requirements of the statute as showing respond-

ent to be entitled to an award of compensation. This conclusion appearing to us to be justified from a consideration of the facts as found by the Industrial Accident Board on review, and the rights of the parties under the facts being in no way prejudiced or affected by the error of the district court in making findings, no useful purpose would be served in reversing the judgment, under our view of the application of the law to the facts. The judgment is therefore affirmed. Costs to respondent.

T. Bailey Lee, J., concurs.

Petition for rehearing denied.

GIVENS, J., Concurring Specially.—I concur in the opinion by Chief Justice Budge except that I think the controlling findings of the board were, in substance, that the company required respondent and all other workmen to fill out, after leaving the mine in the evening and before returning the following morning "time distribution" cards which cards the employer furnished at the bunkhouse, likewise provided by the employer, and which cards as a matter of custom and practice were filled out and deposited in a box at the bunkhouse; and that while the board walk upon which respondent sustained his injury was not the only means used in passing to and from the mine and bunkhouse, it was built by the employer on its premises for the convenience of the workmen and admittedly was used to a greater extent by the employees than other ways.

Under these circumstances the accident arose in the course of and out of respondent's employment and hence compensation should have been allowed. (*Zurich General Accident Co. v. Brunson,* 15 Fed. (2d) 906; *Corvi v. Stiles & Reynolds Brick Co.,* 103 Conn. 449, 130 Atl. 674; *Employers' Liability Corp. v. Henderson,* 37 Ga. App. 238, 139 S. E. 688; *Lee's Case,* 240 Mass. 473, 20 A. L. R. 870, 134 N. E. 268 (compensation was disallowed in this case but on other grounds); *Cook's Case,* 243 Mass. 572, 29 A. L. R. 114, 137

N. E. 733; *Brady's Case,* 256 Mass. 267, 152 N. E. 312; *Rayner v. Sligh Furniture Co.,* 180 Mich. 168, Ann. Cas. 1916A, 386, 146 N. W. 665, L. R. A. 1916A, 22; *Tragas v. Cudahy Packing Co.,* 110 Neb. 329, 193 N. W. 742; *Freitag v. American Ry. Ex. Co.,* 209 App. Div. 233, 205 N. Y. Supp. 189; *Knowles v. North Dakota Compensation Bureau,* 52 N. D. 563, 203 N. W. 895; *Monroe County v. Industrial Commission,* 184 Wis. 32, 198 N. W. 597; *Kimberly-Clark Co. v. Industrial Commission,* 187 Wis. 53, 203 N. W. 737; C. J., Workmen's Compensation Acts, 83; 27 Cal. Jur. 380–395.)

The cases reviewed in *Norris v. New York Cent. R. Co.,* 246 N. Y. 307, 158 N. E. 879, support the position above announced.

*Bell's Case,* 238 Mass. 46, 130 N. E. 67, is distinguishable for two reasons; first, the accident here was on the master's premises on a way, though not exclusive, provided by the master; and the workmen had a duty to perform away from and before returning to actual work in the mine.

I do not concur in the construction placed on *Walker v. Hyde, supra.*

WM. E. LEE, J., Concurring in Part and Dissenting in Part.—I agree that, under C. S., sec. 6270, on an appeal from the Industrial Accident Board, the district court is limited to a review of questions of law and has no power to set aside the findings of the board when they are supported by substantial evidence.

What has been referred to by the Chief Justice, as the general rule, that injuries sustained by a workman, on his way to or from his place of work, on the premises of the employer, are *generally* deemed to have arisen out of and in the course of the employment, should not be held to apply where the accident occurs at a place far removed from the actual place of employment. (49 A. L. R., p. 443, annotation.) In this case, the premises of the employer were not confined to narrow limits but extended far from the place of employment. When claimant was injured, he had quit

work for the day and had left the mine; his services were over; he was not under the pay of the master; his time was his own and he could use it as he saw fit. The relation of master and servant was suspended for the time, and the workman was no more under the control of his employer than any other member of the public; he had left the vicinity of machinery, electric wires, railroad tracks and the other usual dangers incident to industry. He had exercised his choice of the walk, a road and several paths, and was under no more hazard than anyone else.

In order to give controlling importance to the matter of the time distribution card, Mr. Justice Givens concurred specially. I find myself unable to agree with him. The decisions he relies on, in my opinion, do not sustain his position.

The board found: "That during all of the times mentioned herein it was customary for workmen employed by Anaconda Copper Mining Company, including respondent herein, and it was a request on the part of the company, to make out a 'time distribution card' each day, said cards being furnished by the employer, in such a way as to show what kind or class of work each workman including respondent, had performed during the day; that as a convenient method of obtaining this information, both on behalf of the employer and the employees, the mining company caused said 'time distribution cards' to be placed in the bunkhouses, such being the places where the majority of its workmen congregated after work hours, and each employee, including respondent, made out such a card each day after work hours, or before returning to work the next morning, and deposited the same in boxes provided therefor in said bunkhouses; that respondent was not paid by the mining company after his day's work had been completed at the mine for the day at or near 5 o'clock P. M. and more especially was this true with reference to the 14th day of March, 1927, nor was he paid for his time consumed on said date or at any of the times herein mentioned, in traveling from the mine to the bunkhouse where he resided, after his

shift at the mine for the day had been completed, nor for time consumed in making out the 'time distribution card'; that the mining company did not specify any particular time at or during which respondent or any other workmen, should fill out said card for each day's work but left this matter entirely to the convenience of its employees, including respondent, to be attended to at any time before returning to work the next morning; that as a matter of custom and practice this requirement was attended to by respondent, as well as other workmen, at any time during the evening, either before or after he had eaten his supper or attended to other personal duties or business, or before he returned to work the following morning."

When he was injured the workman was not under the control of the employer nor was he engaged in any service incidental to his employment. The filling out and depositing of a time distribution card was merely incidental to his main purpose in going from the mine to where he lived, and was not the major factor with respect thereto. "When it is sought to prove that the service being rendered at the time of the injury was rendered in the course of the employment, by reason of the fact that the employee was performing a mission for the employer, the mission must be the major factor in the journey or movement, and not merely incidental thereto." (*Eby v. Industrial Acc. Com.*, 75 Cal. App. 280, 242 Pac. 901, 902; *London Guarantee etc. Co. v. Industrial Acc. Com.*, 190 Cal. 587, 213 Pac. 977; *Malott v. Healey*, 2 Decisions Industrial Accident Commission (Cal.), 127; *Greer v. Industrial Commission*, (Utah) 279 Pac. 900; *Rawson's Case*, 126 Me. 563, 140 Atl. 365; *DeVoe v. New York State Rys.*, 218 N. Y. 318, 113 N. E. 256, L. R. A. 1917A, 250; *Scanlon v. Herald Co.*, 201 App. Div. 173, 194 N. Y. Supp. 663.)

As said by the late Mr. Justice Taylor, in *State v. Clearwater Timber Co.*, 47 Ida. 295, 274 Pac. 802, 805, "Our workmen's compensation act is not an insurance act." A careful study of this case has convinced me that the injury

did not arise out of and in the course of the employment and is, therefore, not compensable. *Walker v. Hyde,* 43 Ida. 625, 253 Pac. 1104, supports me in this view.

Mr. Justice Varian concurs.