(No. 6007. January 27, 1934.)

IRENE A. VAUGHN, Respondent, v. ROBERTSON & THOMAS, a Copartnership, Composed of JOSEPH W. ROBERTSON and JOHN THOMAS, Employers, and STATE INSURANCE FUND, Surety, Appellants.

[29 Pac. (2d) 756.]

Bissell & Bird, for Respondent.

A. F. James, for Appellants.

WERNETTE, J.—This proceeding was instituted under the Workmen's Compensation Act on account of the death of A. H. Vaughn on December 15, 1931. The appeal is taken from the judgment of the district court reversing the order of the Industrial Accident Board refusing compensation.

The deceased, A. H. Vaughn, had, off and on for a number of years prior to his death, been engaged in herding sheep for appellants, Robertson & Thomas, a copartnership. On or about October 20, 1931, while so employed in herding sheep for appellants, the deceased came off the government forest reserve with his sheep, bringing them to a ranch of appellants' known as the Joslyn Ranch. There is no evidence in the record as to how the time of the deceased was occupied between October 20 and November 3, 1931, except that appellant, J. W. Robertson, testified that he paid deceased his salary for the month of October and the first five days in November. On or about November 5th, A. H. Vaughn was found seriously ill at the sheep corral on said

ranch, and his illness later proved to be Rocky Mountain spotted fever, which illness, undoubtedly, was caused by the bite of an infected wood-tick. It was shown in the record that the region where the deceased had been herding the sheep is one that is infested with ticks. On November 6th, J. W. Robertson took Vaughn from the Joslyn Ranch to his son's home at Jerome, Idaho. He was immediately placed under a doctor's care, who diagnosed his illness as spotted fever and treated him for such fever over a period of about twelve days when Vaughn began convalescing; the doctor then ceased his visits. Before Vaughn had recovered sufficiently to be up and around, and on or about November 28th, he developed secondary pneumonia of the right lung, which the doctor testified is a typical development and usual complication following a case of spotted fever. The doctor treated Vaughn for pneumonia for a period of about eight days, after which he again ceased his visits as it appeared the patient had recovered. However, Vaughn was never well enough to be up and around again except to sit in a chair one day while his daughter-in-law cut his hair, and about ten or twelve days after the doctor's last visit he suddenly died from acute cardiac failure. The doctor testified that the proximate and primary cause of the death was the infection from spotted fever and the complications which followed. In the death certificate the doctor described the principal cause of death and related cause of importance as, "Cardiac failure following Rocky Mt. Tick Fever," and gave as the contributory causes of importance, "Rocky Mt. Tick Fever—Secondary Pneumonia."

This action was instituted by Irene A. Vaughn, widow of the deceased, who was living with deceased as husband and wife but had spent most of her time in Missouri for about ten years preceding his death. It appears that A. H. Vaughn had made several trips to Missouri during this ten year period to see respondent, and his visits had lasted for from six months to a year in duration; once, in 1930, she had visited him in Idaho for a period of about two months. There is ample evidence in the record supporting the find-

ing that during all of this time the deceased had sent money to respondent for her support and had made payments on a car for her; on a number of occasions J. W. Robertson had sent the salary checks of deceased directly to respondent. At the time of his death deceased had a dependent son living of the age of eleven years.

The Industrial Accident Board found that Vaughn died, "from an attack of acute cardiac failure; that the said pneumonia and the acute cardiac failure of which the said Vaughn died and which followed the Rocky Mountain Spotted Fever were complications of, caused by, and the result of the Rocky Mountain Spotted Fever," but that the death "was not caused by nor the result of an accident arising out of and in the course of his employment with the defendants, Robertson & Thomas." On appeal to the district court the order of the Industrial Accident Board was reversed and a judgment awarding compensation was entered; hence this appeal.

Numerous errors are assigned by appellants, but the determination of one question raised is decisive of this case. The claimant, in order to recover, has the burden of proving that the deceased received personal injury by accident arising out of and in the course of his employment. (Sec. 43-1001, I. C. A.) In the determination of the question as to whether the personal injury by accident arose out of and in the course of the employment of the deceased, a number of well established legal principles are applicable and must be considered.

In the recent case of *Logue v. Independent School Dist. No. 33*, 52 Ida. 44, 21 Pac. (2d) 534, this court approves the definition as to when an injury arises in the course of employment, as laid down in the case of *Murdoch v. Humes & Swanstrom*, 51 Ida. 459, 6 Pac. (2d) 472, as follows:

"An injury arises in the course of the employment when it takes place (a) within the period of employment, (b) at a place where the employee may reasonably be, and (c) while he is reasonably fulfilling the duties of the employment or doing something incidental to it."

The Industrial Accident Board, from the evidence, made the following finding with reference to the death of the deceased:

"That the death of the said A. H. Vaughn was not caused by nor the result of an accident arising out of and in the course of his employment with the defendants, Robertson & Thomas."

■■ It has been the uniform holding of this court that the findings of the Industrial Accident Board are final and conclusive, and will not be disturbed if there is sufficient competent evidence to support the same. (*McNeil v. Panhandle Lumber Co.*, 34 Ida. 773, 203 Pac. 1068; *Butler v. Anaconda Copper Min. Co.*, 46 Ida. 326, 268 Pac. 6; *Burchett v. Anaconda Copper Min. Co.*, 48 Ida. 524, 283 Pac. 515; *Delich v. Lafferty Shingle Mill Co.*, 49 Ida. 552, 290 Pac. 204; *Croy v. McFarland-Brown Lumber Co.*, 51 Ida. 32, 1 Pac. (2d) 189; *Ramsay v. Sullivan Min. Co.*, 51 Ida. 366, 6 Pac. (2d) 856.)

In *Dunnigan v. Shields*, 52 Ida. 195, 12 Pac. (2d) 773, this court stated:

"There is but one question before us for determination, namely: Is there sufficient competent evidence in the record to support the findings complained of? The burden is upon the compensation claimant to prove both his disability and that the injury was caused by accident arising out of and in the course of his employment."

Citing: *Croy v. McFarland-Brown Lumber Co.*, supra; *Walker v. Hyde*, 42 Ida. 625, 253 Pac. 1104; *Hawkins v. Bonner County*, 46 Ida. 739, 271 Pac. 327; *Larson v. Ohio Match Co.*, 49 Ida. 511, 289 Pac. 992; *Strouse v. Hercules Min. Co.*, 51 Ida. 7, 1 Pac. (2d) 203. See, also, *Landeen v. Toole County Ref. Co.*, 85 Mont. 41, 277 Pac. 615.

The holdings of this court, as well as those of other jurisdictions having a similar compensation law, seem to be uniform with reference to the burden of proof and essential facts required to be proven before claimant can recover. According to section 43–1408, I. C. A., the district court in reviewing an award of the Industrial Accident Board is

limited to a review of the questions of law only. The district court does not try the case *de novo*. The power of the district court was limited to a determination as to whether the board was justified under the evidence in holding that the death of the deceased was not caused by nor the result of an accident arising out of and in the course of his employment. If the evidence is not conflicting and stands uncontradicted and only one reasonable inference can be drawn therefrom, then the question as to whether an award should be made becomes a matter of law to be determined by the court. (*Burchett v. Anaconda Copper Min. Co.*, 48 Ida. 524, 283 Pac. 515.) But if reasonable men could draw different inferences from the evidence then the findings of the board are conclusive and final, even though the court might draw a different inference.

In *Johnson v. Industrial Com.*, 35 Ariz. 19, 274 Pac. 161, the court said:

"Under the Compensation Act (Laws 1925, c. 83) petitioners must show affirmatively by a reasonable preponderance of the evidence that the death arose both out of and in the due course of the employment. (Citing cases.)

"If the evidence is such that a reasonable man could reach a conclusion therefrom either way on such issues, the decision of the Commissioner on the facts has the same force and effect as the finding of a jury, and will not be disturbed by us."

The California court in *Payne v. Industrial Acc. Com.*, 84 Cal. App. 657, 258 Pac. 620, states the rule as follows:

"The court, in reviewing awards of the commission, is not acting as a court of appeal, . . . . and is without power to determine the weight to be given the evidence . . . . or which of two opposing inferences should be drawn therefrom, . . . . "

In *George L. Eastman Co. v. Industrial Acc. Com.*, 186 Cal. 587, 200 Pac. 17, the court said:

"It is only where there is such an entire absence of evidence as renders the findings of the Commission unreasonable or in excess of its powers that this court is empowered

to set aside its findings. . . . . Where two rational conclusions can fairly be drawn from the evidence, one sustaining and the other opposing the right to compensation, the conclusion adopted by the Commission is beyond the scope of our review.''

■ With the legal principles thus announced to guide us, let us examine the record. The deceased had been working for Robertson & Thomas as a sheepherder, on and off covering a period of years. During part of the month of October, 1931, he was herding a band of sheep of Robertson & Thomas on the range of the government forest reserve. Witness J. W. Robertson stated that he saw deceased sick on November 5, 1931. When asked as to how long prior to that date he had seen deceased he answered: ''Oh, I had not seen him since he came off the Reserve on the 20th of October. It was about the 24th of October, I guess, was the last time that I saw him. That was the day that they got off the Reserve.'' It appears from the record that the sheep were taken from the reserve or range to the corral of defendants, Robertson & Thomas, on what is known as the Joslyn Ranch in Blaine county. The witness also testified that his brother, J. C. Robertson, phoned him on the 5th of November advising him that the deceased was ill, and that he went to the corral on November 5th where he found the deceased sick and that he brought him to Jerome on November 6th.

Claimant's witness, J. C. Robertson, testified as follows:

''Q. Do you remember the circumstances of his taking sick in the latter part of October, 1931?

''A. Yes.

''Q. You may state those circumstances to the Board.

''A. Well, I know he got sick there about the latter part of October or the first of November. He came to the corral there one day. We had him come in, and when I found him he was lying on the ground, and he turned the sheep loose and I had to go gather the sheep up. That is the main thing I remember about it. He was not able to gather the sheep up, and I think I 'phoned to my brother

and he took him in that night, I guess. I couldn't tell the date, but it was the forepart of November.

"Q. Then you discovered him sick?

"A. He was sick, when I found out that he was sick.

"Q. And that was the day before J. W. Robertson came out?

"A. Either that day or the next day. I don't know which. I think it was that day, however, that he brought him in. I am not sure about it. . . . .

"Q. Do you know of your own knowledge how long he had been sick prior to that time?

"A. I don't know.

"Q. What was his condition at the time you discovered him?

"A. Well, he wasn't able to handle a bunch of sheep, and I had ordered him in to the corral to work the sheep and he was just lying down on the trail and turned the sheep loose when I found him. . . . .

By Mr. Suppiger: (Member of the Board.)

"Q. Pardon me a moment. You said you found him lying on the trail. Where is this trail?

"A. He was not on the trail. I had ordered him in to the corral to work the sheep.

"Q. Oh! A corral, where?

"A. Sir?

"Q. Where?

"A. It is what we call on the Joslyn ranch about three miles out of Bellevue."

Joe Correia, witness for the claimant, testified as follows:

"Q. Did you know A. H. Vaughn in his lifetime?

"A. Yes.

"Q. Do you remember when he got sick?

"A. Yes, I remember that.

"Q. Were you working with him?

"A. Yes.

"Q. Do you remember when Mr. Billy Robertson came up and took him home?

"A. Yes.

"Q. Do you know how long he had been sick before?

"A. Four or five days before they took him home."

There was also some testimony on 'the part of Doctor Zeller, who had treated deceased, that he called on him the first time at Jerome on November 3d. We have searched the record quite carefully and the testimony above set forth is the only evidence in the record as to where the deceased was and what he was doing covering the period from about October 20 until November 3, 1931. One of the specific findings of fact of the board, is as follows:

"That during the spring and summer of 1931, and up to and about the 20th day of October, 1931, the said A. H. Vaughn, now deceased, as part of his duty had been herding the sheep of the defendants, Robertson & Thomas, on public range in the government forest reserve and on about the said 20th day of October had brought a herd of sheep to the corral of the defendants, Roberston & Thomas, on what is known as the 'Joslyn Ranch' in Blaine County, Idaho."

It is to be noted that the record in this case is conspicuous by reason of the absence of any testimony as to where the deceased was, or what he was doing between the twentieth day of October, 1931, and the second or third day of November, 1931. Attorneys for respondent, in the oral argument, urged most strenuously that the evidence as a whole conclusively shows that the deceased was herding sheep during the whole of said time; that all of the evidence available to claimant as to where deceased was and what he was doing during said time, was submitted to the board. We submit that the record does not bear out such contention. It is reasonable and fair to assume, from the record, that J. W. Robertson, J. C. Robertson and Joe Correia all knew where the sheep were during that period and whether the deceased was actually working with the sheep during such period. From the evidence given by these three witnesses it seems quite certain that each one knew whether the deceased was working with the sheep, yet no questions were asked of these witnesses. There is nothing to indicate that

the three witnesses were unfriendly toward claimant and her cause, and it is only fair to assume that the fact as to where the deceased was and what he was doing during said period was not developed by these witnesses for the reason that their testimony would not have been favorable to claimant.

Respondent contends that J. W. Robertson saw the deceased as he left the reserve with the sheep, and that it took the deceased several days to drive the sheep from the reserve to the corral. But there is absolutely no evidence as to where the reserve was, how many miles it was from the corral or how long it took to drive the sheep from the reserve to the corral. Further, the testimony of the witness J. W. Robertson is such that a reasonable person might infer that the sheep were not actually leaving the reserve but were at the corral when he saw deceased on or about October 20th.

There is no evidence in the record of the length of time of the incubation period, that is, the time for the development of the disease after the bite of the infected wood-tick. That is a question of fact that required evidence to establish, yet the record is silent. For all we know such period of incubation may be an hour, day, week or month. The record does not disclose that the deceased was required to render continuous service to the employer, if anything it is to the contrary. According to claimant's exhibit B, Notice of Injury and Claim for Compensation, filed with the board, the working hours of the deceased, per day, were ten hours. As to what he did with the remainder of fourteen hours each day the record is silent. He may have been required to camp and sleep out among the tick infested sage-brush as a necessary incident of his employment, as was orally contended by respondent's attorneys, or he may have been working in an area where other facilities were available. From a careful examination of the entire record, the deficiency of the record, as pointed out, as to how, when and where or under what circumstances the deceased was bitten by an infected tick, or the establishment

of facts from which a reasonable inference could be drawn leaves the whole matter to speculation and conjecture.

The board was amply justified, on account of failure of proof on the part of claimant, in finding that the death of deceased, A. H. Vaughn, was not caused by nor the result of an accident arising out of and in the course of his employment. That was a reasonable inference to be deduced from the record, and the evidence clearly supports such finding, even though it be possible for others to arrive at a different inference or conclusion. In *McMaster v. Warner*, 44 Ida. 544, 258 Pac. 547, this court stated:

"This reasoning is unsound for the rule has been repeatedly announced in this state that every party to a law action has a right to insist upon a verdict or finding based upon the law and the evidence in the case and not, in the absence of evidence, upon mere inference or conjecture."

Upon a careful examination of the record we reach the conclusion that the findings of fact, rulings of law and order made by the Industrial Accident Board were correct and are supported by the law and the evidence, and the district court erred in making new findings, conclusions of law and judgment contrary thereto. Therefore, the judgment of the district court is reversed and it is directed to enter a judgment affirming the findings of fact, conclusions of law and order made by the Industrial Accident Board.

No costs allowed.

Budge, C. J., and Givens, J., concur.

HOLDEN, J., Concurring.—I concur in the conclusion reached that the judgment of the district court must be reversed, and the order of the Industrial Accident Board affirmed, upon the ground of the insufficiency of the proof to establish that the accident arose out of and in the course of the employment of the deceased.

MORGAN, J., Concurring.—I join in Justice Holden's concurring opinion. According to my view findings of fact

by the Industrial Accident Board are not binding on the courts. See dissenting opinion in *Larson v. Callahan Canning Co.*, not yet reported.

Petition for rehearing denied.