(No. 15063.—Judgment affirmed.)

The Danville, Urbana and Champaign Railway Company, Defendant in Error, *vs.* The Industrial Commission *et al.*—(Zina Altimus, Plaintiff in Error.)

*Opinion filed February 21, 1923.*

1. Workmen's compensation—*claimant must prove that accident arose out of and in course of employment.* In a proceeding for compensation for the accidental death of an employee, which occurred during the hours of retirement in a bunk-car provided by the employer, the burden is on the claimant to prove that the deceased was occupying the bunk-car at the time of the accident as an essential or incidental part of his employment and that he was subject to call for work outside the regular hours of his employment.

2. Same—*application of the phrases "arise out of" and "in the course of" the employment.* As the phrases "arise out of" and "in the course of" the employment, in the Compensation act, are used conjunctively, the circumstances of the accident must satisfy both conditions and there must be apparent to the rational mind a causal connection between the conditions under which the work is performed and the injury.

3. Same—*what determines whether an employee is in course of employment.* The controlling factor in determining whether the employee was in the course of his employment at the time of the accident is whether he was at that time in the orbit, area, scope or sphere of the employment, which may include the doing of things not directly connected with the work or with the particular duty for which he was employed but which is incidental thereto or which may reasonably be done within the time of the employment.

4. Same—*when accident to electric railway employee does not occur in course of employment.* The accidental death of an employee of an interurban railway company occurring during the hours of retirement in a bunk-car provided by the employer as a lodging for the employees if they cared to use it for that purpose does not occur in the course of the employment, where the employee was hired for ten-hour daywork and there is no evidence that he was subject to call for work during the hours of retirement; and the fact that the employee at the time of his death may have been attempting to carry out certain instructions of the employer as to the use of the bunk-car does not bring the accident within the scope of the employment.

Writ of Error to the Circuit Court of Vermilion county; the Hon. John H. Marshall, Judge, presiding.

James Dwyer, for plaintiff in error.

. Henry I. Green, and Acton, Acton & Snyder, for defendant in error.

Mr. Justice Carter delivered the opinion of the court:

An application by plaintiff in error for adjustment of claim was filed with the Industrial Commission for the death of Cecil Busz, alleged to have been caused by an accident which arose out of and in the course of his employment by defendant in error on October 10, 1920. The arbitrator found in favor of the applicant and on review before the Industrial Commission the arbitrator's award was approved. The circuit court set aside the order of the Industrial Commission, and the cause has been brought to this court by writ of error.

Cecil Busz, a son of plaintiff in error, had been working as a bridge repair man for defendant in error since May 20, 1920. A bunk-car was furnished by the company to the men engaged in that work, containing beds and a place for the men to eat their meals and a place to cook. The headquarters from which the bunk-car started with the employees at the beginning of the week's work was Danville, Illinois.

It appears that the car would often be out on the railroad away from Danville and it might be difficult to get meals for the bridge gang where they were working, but that when the car was at Danville over the week-ends, as it was at the time of the accident, there was no benefit to the company by the employees either eating or sleeping in the car. The bridge gang were permitted to eat and sleep there, both out on the road and while they were in Danville. The employees who ate in the car paid for their own provisions, and as the men were on a ten-hour basis, it is evident that after the working hours of the day on a Saturday afternoon ceased the pay stopped for all of them, including the man who did the cooking. There was no obligation on the part of the men to eat or sleep in the car but they could do so if they liked. The deceased and one of the other repair men had a private room which they shared together in Danville, and some Saturday nights they stayed in their room and some in the car. There were no particular restrictions upon the use of the car, either during the time the men were working or at the week-end intervals. The evidence shows that there was an instruction by the foreman of the bridge gang that the last man using the light in the bunk-car at night should disconnect the trolley pole from the trolley wire, and this was apparently a general order, for the purpose, as one of the witnesses stated, of preventing the plug from being pulled out in case the car was moved in the night. The bunk-car had been used on the day of the accident, Saturday, October 10, 1920, and it is admitted that the men quit work about 5:30, some of them, including Busz, going to their private rooms in Danville. The evidence shows that Busz changed his working clothes for his better clothes and spent the evening in town, returning to the car about eleven o'clock with some of the other men. All of those in the car went to bed just before the accident happened, except Busz, who stayed up to read. As we understand the record, there was a flexible insulated wire

which connected with the electric light plug in the car and ran outside the car, where it was fastened to a pole, terminating in a hook of bare, stiff wire at the end of the pole. When the hook was put across the trolley wire by means of the pole the electric current supplied the light. About midnight some of the men in the car heard Busz call for help. His body was found about ten feet from the end of the bunk-car, lying across the ends of some rails which were piled there. The hook was on the trolley wire but the plug was pulled out of the socket in the car and the lights were out. There is no testimony in the record as to how the accident happened. One of the men testified that he heard Busz pass his bed and in a very short time thereafter heard the cry for help. Busz's neck was broken and there were electric burns on one hand. He was clad only in his underwear. He was dead before the arrival of the doctor who was sent for as soon as the men learned of the accident.

The only question in the case is whether the accident was one arising out of and in the course of the employment. Contrary conclusions are sought to be drawn from the evidence by the arguments of the respective counsel in passing on the contract of employment, counsel for plaintiff in error suggesting that Busz was practically engaged in a continuous employment and subject to be called at any time, while counsel for defendant in error argue that the evidence shows the employment was for a definite time of ten hours per day, and that Busz was not subject to a call at any time outside of those hours. The only positive testimony in the record is that the employment was on a ten-hour basis, and that nothing was said at the time of the employment by defendant in error or its agents about its employees being ready for emergency work, including night work, and the evidence shows there had never been during Busz's employment a call upon the employees for extra, night or other emergency work. The burden was upon the claimant, in order to fix defendant in error's liability, to establish the

fact that the deceased was subject to emergency calls outside of the ten-hour employment, and that he slept in the car because he was subject to such call for emergency work or as part of the duties of his employment.

So far as the evidence discloses, the bunk-car was furnished by defendant in error for the convenience of the bridge gang, although naturally, too, for the convenience of the employer when the men were to be taken from place to place on the road, but it was no part of the contract of employment that such car should be furnished, and it was no part of the contract that the men should be permitted to use the car at times when they were not employed. The burden of proof was on the claimant to establish that the occupancy of the car at the time of the accident was an essential or incidental part of the employment of deceased. The phrases "arising out of" and "in the course of" the employment are used conjunctively, and the circumstances of the accident must satisfy both the one and the other. (*Schweiss* v. *Industrial Com.* 292 Ill. 90; *Payne* v. *Industrial Com.* 295 id. 388.) There must be apparent to the rational mind a causal connection between the conditions under which the work is performed and the injury. (*Edelweiss Gardens* v. *Industrial Com.* 290 Ill. 459.) The scope of the employment includes the doing of things not directly connected with the work but which reasonably may be done within the time of the employment. (*Vulcan Detinning Co.* v. *Industrial Com.* 295 Ill. 141.) The controlling factor in determining whether the employee is in the course of his employment is whether at the time of the accident he was within the orbit, area, scope or sphere of the employment. (*Wabash Railway Co.* v. *Industrial Com.* 294 Ill. 119.) He may be in the general area of the employment though not engaged in the particular duty for which he was employed or in any work incidental thereto. (*West Side Coal Co.* v. *Industrial Com.* 291 Ill. 301.) Permitting the men to use the bunk-car at the time of the accident was, from the

evidence in the record, purely a voluntary act on the part of the company, and was a mere acquiescence on its part to permit the bunk-car to be occupied at the time by such of the men as desired.

In *Philbin* v. *Hayes,* 11 B. W. C. C. 85, the employers contracted to carry out extensive constructional work in an English village where there was little or no sleeping accommodation for the large number of workmen necessary to be employed on the work. To provide for such accommodation the employers erected huts. They then advertised for workmen, and stated as an inducement that huts and sleeping accommodation would be provided at two pence per night. There was no obligation upon the workmen to take advantage of this hut accommodation, and they could, if they wished, sleep elsewhere. One of the workmen, with others, came from Ireland and commenced work under these circumstances and slept in one of the huts. One night during a storm the hut was blown down while the workman was asleep therein and he was injured. On a claim for compensation it was held that when injured he was in the same position as if he were at home, it being no part of his contract of employment to occupy the hut, and the accident therefore did not arise in the course of the employment.

In *Wray* v. *Taylor Bros.* 6 B. W. C. C. 529, it appeared that a person was employed as a steel-tester during the day at certain wages per week and slept at night in a cottage adjoining the works, belonging to the employer. The employee paid no rent for the cottage but agreed to keep the office of the company clean, and 'his women folks did the cleaning. He was asphyxiated at night by fumes of gas from a stove in the basement. The court held that the employee was not compelled to live in the cottage and that the employer was not liable for compensation.

In *Savoy Hotel Co.* v. *Industrial Board,* 279 Ill. 329, a hotel porter who was employed at stated hours had the right to stay at the hotel after his work was ended or leave it, as

he chose, and if he stayed he was subject to call. He was found dead in the elevator shaft, with his uniform on. It was held that the proof was not sufficient to show that the injury arose out of or in the course of the employment.

In *Pearce* v. *Industrial Com.* 299 Ill. 161, there was a lunch period for the employees, and Pearce, an employee, was not subject during the lunch period to the employer's control or restricted in any way as to where he was to take his meal. He went on a public street to obtain provisions to prepare the meal, and it was held that an accident which occurred on the public street while he was going after provisions did not arise out of the employment.

It is manifest from the evidence that the accident here in question did not happen during the period of Busz's employment, and that while he was privileged to stay in the bunk-car he was not required to do so at the time of the accident, and therefore, under the authorities, he was not at the time of the accident within the scope of the employment. The fact that the employees were instructed to take the hook and pole from the trolley wire when they retired in the bunk-car did not bring the deceased, if his injuries were caused by attempting to put out the light, within the scope of his employment at the time of the accident.

The authorities cited by counsel for plaintiff in error as to so construing the Workmen's Compensation act that its humane purpose may be realized are appropriate statements of the law but do not apply in a case where the accident occurs to the employee while performing some act not within the scope of his employment.

The circuit court rightly held that the accident did not happen within the scope or sphere of the employment of deceased. Its judgment will be affirmed.

*Judgment affirmed.*