# BEAVER CITY et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

## No. 4338.   Decided March 17, 1926.   (245 P. 378.)

1. MASTER AND SERVANT—INJURY IS ONE "ARISING OUT OF AND IN COURSE OF EMPLOYMENT" WITHIN COMPENSATION STATUTE, WHEN RESULTING FROM RISK INCIDENTAL TO EMPLOYMENT (COMP. LAWS 1917, §§ 3061-3165).   Compensation statute (Comp. Laws 1917, §§ 3061-3165), including phrase, "arising out of and in course of employment," requires liberal construction and accident arises out of employment when resulting from risk incidental thereto, as distinguished from risk common to all mankind.[1]

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Course of Employment.]

2. MASTER AND SERVANT—INJURY TO MARSHAL, BY ACCIDENTAL DISCHARGE OF GUN WHEN CLEANING IT AT HIS RESIDENCE, HELD TO ARISE OUT OF AND IN COURSE OF EMPLOYMENT.   Injury to city marshal, regularly on duty from 8:30 a. m. to 11 p. m., and subject to call at all hours of day or night, caused by accidental discharge of gun he was required to carry, while cleaning it at his residence, *held* to arise out of and in the course of his employment.

3. MASTER AND SERVANT—LEADING QUESTIONS PROPOUNDED BY MEMBER OF COMMISSION HELD HARMLESS, IN VIEW OF SUFFICIENT EVIDENCE TO SUPPORT AWARD.   In proceedings before Industrial Commission for injuries to city marshal by accidental discharge of gun, award *held* supported by sufficient evidence, independent of applicant's answer to leading questions propounded by member of commission relative to injury, and hence such questions were harmless.

4. MASTER AND SERVANT—INDUSTRIAL COMMISSION SHOULD AVOID LEADING QUESTIONS RELATING TO MATERIAL ISSUES.   Industrial Commission must use its sound discretion in propounding leading questions to witness, and leading questions relating to ma-

---

[1]*Cudahy Packing Co.* v. *Parramore*, 207 P. 148, 60 Utah 161, 28 A. L. R. 1394.

Corpus Juris-Cyc. References:

[1] Workmen's Compensation Acts, C. J., p. 40, n. 95; p. 73, n. 80 New.

[2] Workmen's Compensation Acts, C. J., p. 81, n. 36.

[3, 4] Workmen's Compensation Acts, C. J., p. 115, n. 22 New; p. 124, n. 66 New.

terial or disputed point, or issue, should be avoided in direct examination of witness by counsel or commission, unless circumstances or conditions justify leading questions.

Proceedings under the Workmen's Compensation Act by Marshal of Beaver City, opposed by Beaver City, a municipal corporation, and the State Insurance Fund. Order of the Industrial Commission, granting an award, and Beaver City and the State Insurance Fund bring original proceedings for review against the Industrial Commission of Utah and another.

AWARD AFFIRMED.

*Bagley, Judd & Ray,* of Salt Lake City, for Insurance Fund.

*Abe Murdock,* of Beaver City, for Hyrum A. White.

STRAUP, J.

This is a review of a record of the Industrial Commission. The principal question is whether the injury arose out of or in the course of the employment of the injured. The commission held that it did, and made an award.

The employe was city marshal of Beaver City. He was regularly on duty from about 8:30 a. m. until about 11 p. m., sometimes, as occasion required, until after midnight, and was subject to call at all hours of the day and night. The commission found that, while the marshal was driving cattle out of the park, and in his jumping a ditch, his revolver fell out of his pocket and in the ditch and got wet and muddy. He had no regular office and no convenient place to clean the gun except at his residence nearby. He went home about 5:30 p. m., about a half hour earlier than usual, for dinner and to clean and oil the gun at his house. While cleaning it, the gun was accidentally discharged, the bullet striking him in the knee and injuring him. The officer testified, and the commission found, that the carrying of a gun was necessary

in connection with his employment and in the discharge of his duties. That is not disputed. Nor is it claimed that cleaning the gun, or keeping it clean, was not an incident to or no part of the employment or of the officer's duties. It is not made to appear whether the gun was the property of the city or of the officer, nor do we think that controlling. The contention is that the officer going to his home to clean, and while he was there cleaning, the gun was not then on duty nor on his way to or from duty, nor then acting as an officer, and that the time and place voluntarily chosen and selected by him was one off duty and a place away from the scene of his official activities and employment, and hence, the cleaning of the gun under such circumstances was not in the course of his employment nor a natural incident thereto. To support the contention, the cases of *De Voe* v. *New York State Rys.*, 113 N. E. 256, 218 N. Y. 318, L. R. A. 1917A, 250, *Scanlon* v. *Herald Co.*, 194 N. Y. S. 663, 201 App. Div. 173, *Hornby's Case* (Mass.) 147 N. E. 577, and notes to cases in 12 N. C. C. A. 387, are cited.

In the first case cited, the employe was a motorman residing at Mohawk. On the day of the accident, he had finished his work for the day, and, while hurrying from the roundhouse at Mohawk to catch a train of the New York State Railways to go to Herkimer to have his watch tested, he, near the curb of the street, was struck by an automobile and injured. Under the rules of the company he was required to have his watch tested once in every two weeks. The employes were not paid for the time which they consumed in having their watches tested or in going to and from the place where the tests were to be made. The court took the view that the motorman "was not employed to have his watch regulated, and therefore was not injured while doing a duty that he was employed to perform. He was not injured while on duty, nor on the way to or from his duty within the precincts of the company," and hence affirmed the order of the commission denying an award. We here perceive a somewhat dissimilar situation. The accident occurred between the

regular hours of the marshal, and, further, the employe here in a sense was on duty all the time. He was not, like the motorman, on duty only during specified hours, at the termination of which he was off duty. There the court held that testing or having tested his watch was no part of the motorman's employment nor an incident thereto. Here, cleaning the gun—keeping it in suitable condition—may, on the record, well be said to have been a part of the duty of the marshal, or at least a natural incident thereto. There the motorman was injured, not while discharging some duty incident to his employment, but while on his way, or about to go, to some place to have his watch tested, which, as the court there said, was no part of his employment. Here the marshal was not injured while going to some place to clean the gun, but while he was actually cleaning it, actually engaged at something which it is not disputed was an incident to his employment. In other words, had the marshal no duty to perform with respect to the cleaning of the gun or keeping it in a clean or suitable condition, and when off duty and not connected with his employment, and without direction, had undertaken to take the gun to some other town or place to there have it cleaned, and on his way was injured in a public street by a danger—struck by an automobile—not peculiar nor pertaining to the employment, but common to everyone on the street, a similarity with such a case and the De Voe Case might be perceived. Or had it in the De Voe Case been shown that it was the duty of the motorman to adjust or repair his watch or to do so was naturally incident to the employment, and while he was so repairing or adjusting it, the crystal of the watch, let it be assumed, had accidentally been broken and pieces thereof cast into his eye, injuring it, such a case would be more nearly similar to this than is the reported case.

In *Scanlon* v. *Herald Co.* the employe of the advertising department of a newspaper, to facilitate his work, took a copy with him on going home to lunch at 5 p. m. to there prepare it for the printers and on returning to the office at

about 6:40 p. m. slipped on the street and was injured. The work consisted principally of marking on the copy directions as to the size of type to be used in printing the different types. He did some of that work at his home before supper, and after supper was on his way to the office, when he slipped and fell on the street. The employe there was not injured in the performance of the work, preparing the advertising matter. The dangers walking along the street from his house to the plant or newspaper office were not incident to his employment, but were dangers common to all. Nor was it made to appear that the street was in such close proximity to the plant or connected with it as an ingress thereto or egress therefrom in any sense as to be a part of the plant, or situated in such a way that to be upon the street practically amounted to being on the premises of his employer. The employe here was not injured under any such conditions or in any condition going to or from his place of work or to his employer's premises.

In Hornby's Case it was held that the injury of a watchman while going from his employer's place of business to police headquarters to be sworn as a special officer from being struck by an automobile in a public street did not arise out of his employment. Said the court:

"In this commonwealth in proceedings under the Workman's Compensation Act * * * to be entitled to compensation the injury must arise out of or be caused by the employment. It has been held that an injury resulting from a collision with an automobile, moving on a public street, is not an injury which under ordinary circumstances arises out of the employment, although at the time the employe is engaged in the employer's business. It has been held that the danger of being struck by a passing automobile does not arise out of the employment, but is a danger peculiar to public travel, to which all pedestrians upon the public ways are exposed."

We think the case in hand is not of that character. Here the cleaning of the gun was connected with and arose out of the employment, and the injury resulted while the employe was engaged in that act and exposed to the danger attending

it, not a danger common to every one, but a danger which was peculiar and an incident to the employment.

It is well settled that the statute requires a liberal construction, including the phrase "arising out of or in the course of the employment." That has been held several times by this court and many times asserted by other courts as to similar statutes. It was especially asserted by this court in *Cudahy Packing Co.* v. *Parramore,* 207 P. 148, 60 Utah, 161, 28 A. L. R. 1394, affirmed in 44 S. Ct. 153, 263 U. S. 418, 68 L. Ed. 366, 30 A. L. R. 532. There the Supreme Court of the United States approved this statement in the case of *Pierce* v. *Providential Clothing & Supply Co.,* 1 K. B. 997:

"An accident arises out of the employment, where it results from a risk incidental to the employment, as distinguished from a risk common to all mankind, although a risk incidental to the employment may include a risk common to all mankind."

Here the injured employe, in a sense, was on duty all the time. *Lake* v. *City of Bridgeport,* 128 A. 782, 102 Conn. 337. That the injury occurred at the applicant's house instead of at some other place is answered in favor of the applicant in the case of *Knowles* v. *North Dakota Workmen's Compensation Bureau* (N. D.), 203 N. W. 895. Had the marshal undertaken to clean the gun at the ditch and at the time it dropped out of his pocket, and in doing so then was injured by an accidental discharge of the gun, we think it could not successfully be contended that the injury did not arise out of or in the course of his employment. And we think it would have made no difference had he gone to the city hall (if Beaver City had a hall) or to some other convenient place, and had there attempted to clean the gun. Having no material with him with which to clean the gun, and there being no convenient place to clean it, he went to his house. He still was on duty and within the corporate limits over which his duties extended, and, though in his own house, yet in a sense on the premises of his employer, and, so far as made to appear, there exposed to no more danger in

cleaning the gun than had he undertaken to clean it at the ditch or at some other place. We thus do not see wherein, in cleaning the gun at his house, the officer was any less in the course of his employment than if he had undertaken to clean it at some other place. It further is made to appear that cleaning the gun at his house was not a place chosen or selected by him as a mere personal convenience or accommodation, but rather one of necessity; there being no other place where he conveniently could have cleaned it. Thus, under the circumstances, we think the award was proper.

A further point is made that at the hearing leading questions as to material issues were propounded to the applicant by a member of the commission, such as:

"I will ask you if anything occurred in the course of your employment which resulted in injury?" "Were you in the course of your employment when you dropped your gun in the ditch?" "It was there (at the house) when you were cleaning your gun when it was discharged causing your permanent disability, and do you consider as a result of that injury that your injury is permanent?"

To each the applicant answered in the affirmative. It is not claimed that the award should be set aside alone because of these questions and responses thereto, but on the ground of a want of evidence other than such stated conclusions and responses of the witness. In that we think counsel in error. In addition to the questions and responses complained of, the witness testified to the facts as herein recited, as well as to the extent and character of his injury, and how it was occasioned, and produced the attending physician who more in detail described the character and extent of the injury and its effects. Thus the witness, having testified concerning the facts as to his employment, his duties, and the time, place, and the circumstances under which the accident occurred, and he and his physician having described the character and extent of the injury, we think the rulings complained of were harmless, and that the award is supported by sufficient evidence, independent of the stated con-

clusions of the witness. Of course, in a direct examination of a witness by counsel or the commission, leading questions relating to a material and disputed point or issue should be avoided, unless circumstances or conditions are apparent justifying one asking leading questions of his own witness. But no hard and fast rule can be laid down as to when the commission may propound a leading question to a witness and when it should refrain from so doing. That is something which to some extent must rest within the sound discretion of the commission. Questions calling for the mere conclusion of a witness as to an ultimate fact or finding exclusively within the province of the commission to determine or deduce—such as whether the injury occurred in the course of employment—should be avoided. If here there were no other evidence to support such a material issue except the mere stated conclusions of the witness, the award would not be sufficiently supported. But there were facts testified to which, independently of the stated conclusions, show that the injury did arise out of or in the course of the employment, and hence the award must be affirmed, notwithstanding the complained of rulings.

Award affirmed.

GIDEON, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.