(No. 5922.   April 18, 1933.)

WILLA LOGUE, Respondent, v. INDEPENDENT SCHOOL DISTRICT No. 33, ADA COUNTY, IDAHO, Employer, and STATE INSURANCE FUND, Surety, Appellants.

[21 Pac. (2d) 534.]

P. B. Carter, for Appellants.

E. B. Smith and W. H. Davison, for Respondent.

GIVENS, J.—Respondent, a school-teacher in appellant school district, the morning of November 16, 1931, walking from her home to the schoolhouse, about one and one-half blocks, fell and broke her hip, for which she sought, and was awarded by the Board and the trial court, compensation.

The sole question is whether the accident arose out of and in the course of her employment as school-teacher.

The evidence shows without dispute that the morning was stormy and snowy, and the sidewalk slippery, that respondent was not only going to the schoolhouse to begin her duties in the schoolroom, but was also returning to the principal a book, which under the statutes and regulations of the school district she was required to read, and prepare a review thereof, one copy for the principal and one for a subsequent teachers' meeting, and that immediately prior to and at the time of the accident, respondent was watching some school children who were snowballing, and while their conduct was not such as to call for a reprimand or a report in regard thereto, she was watching their conduct, and also on the lookout to observe any other pupils on their way to school.

Section 32–1003, I. C. A., requires school-teachers to—

" . . . . . hold pupils to a strict account for disorderly conduct or improper language in or about the building, on the playgrounds, *and on the way to and* from school. . . . . " (Italics ours.)

This statute was considered in *Scrivner v. Franklin School Dist.*, 50 Ida. 77, 293 Pac. 666, to impose on the teacher a duty coextensive with the limits at least of the school district, and likewise as to time, is coextensive with that period when children are on their way to and from school.

"It is not only the legal right, but the moral duty, of the school authorities, to require children to go directly from school to their homes. All parents who have a proper regard

for the welfare of their children desire it. The state makes it compulsory upon parents to send their children to school and punishes them for failure to do so. The least that the state can in reason do is to throw every safeguard possible around the children who, in obedience to the law, are attending school. The dangers to which children are exposed upon the streets of cities are matters of common knowledge. Humanity and the welfare of the country demand that a most watchful safeguard should, so far as possible, accompany children, when required or allowed to be on the streets. Parents have a right to understand that their children will be promptly sent home after school, and to believe that something untoward has happened when they do not return in time. In no other way can parents and teachers act in harmony to protect children from bad influences, bad companionship, and bad morals.'' (*Jones v. Cody,* 123 Mich. 13, 92 N. W. 495, 62 L. R. A. 160, 163.)

The return of the book and the delivery of the report to the principal, since to do these things respondent was merely pursuing the ordinary route from home to the school, might not be considered sufficient to justify the inclusion of the accident within the scope of her employment, though a somewhat similar situation has been so considered. (*Lake v. City of Bridgeport,* 102 Conn. 337, 128 Atl. 782.)

Even though respondent did not at the time find it necessary to discipline any pupils, or notice conduct which would require a report, she was in a position to do so, and was engaged in observing school children for that purpose, and the circumstances in the two authorities following are sufficiently in point to support the conclusion that she was within the scope of her employment, and actively engaged in her duties expressly imposed upon her by the statutes and the rules (*Colorado Contracting Co. v. Industrial Commission,* 74 Colo. 206, 219 Pac. 1075; *Empire Health & Acc. Ins. Co. v. Purcell,* 76 Ind. App. 551, 132 N. E. 664), and that the accident arose in the course of and out of her employment. (*Zeier v. Boise Transfer Co.,* 43 Ida. 549, 254 Pac. 209;

*Wahlig v. Krenning-Schlapp Grocer Co.,* 325 Mo. 677, 29 S. W. (2d) 128.)

■ The general rule applicable has been indicated by this court in *Murdoch v. Humes & Swanstrom,* 51 Ida. 459, 6 Pac. (2d) 472, as follows:

" 'An injury arises in the course of employment when it takes place (a) within the period of employment, (b) at a place where the employee may reasonably be, and (c) while he is reasonably fulfilling the duties of the employment or doing something incidental to it.' ' ',

which is amplified in *Polo v. Majestic Coal Co.,* 208 Ala. 86, 93 So. 728, cited with approval in *Murdoch v. Humes & Swanstrom, supra,* thus:

"Without attempting a comprehensive definition it is said that the statute imposing liability embraces all injuries that arise out of and occur while the workman injured is doing what a man under like facts and circumstances, engaged in like employment, may reasonably do (within the time during which he is also employed and at a place where he may reasonably be during that time) in the conduct or projection of such work for the employer, or in the promotion or safeguarding of such business, or for the protection of the men and properties while used or engaged for the purpose of the master's business. And the effect of well-considered cases is that an employe does not step aside from his employment, and is without the protection of the statute, when he is doing a reasonably necessary act at the time and place to the end that the work and business of the employer may be properly conducted or preserved, or the safety and health of the human and physical Agencies engaged therein be conserved, and the ways, works, machinery, or plant safeguarded. In such a temporary deviation by the employe from the original employment or a temporary departure by him from his usual vocation, in the performance of some work for the employer, he is yet acting within the course of his employment. This is the spirit and letter of the Employers' Liability Act, that while so acting (in the course of his em-

ployment, as we have defined) the employe is primarily acting for the master and not for himself.''

Other authorities to the same effect are: *Beaver City v. Industrial Commission,* 67 Utah, 8, 245 Pac. 378; *Hama Hama Logging Co. v. Department of Labor & Industries,* 157 Wash. 96, 288 Pac. 655; *Danville etc. Ry. Co. v. Industrial Commission,* 307 Ill. 142, 138 N. E. 289; *Capital Paper Co. v. Conner,* 81 Ind. App. 545, 144 N. E. 474; *Jeffries v. Pitman-Moore Co.,* 83 Ind. App. 159, 147 N. E. 919; *Keaney's Case,* 232 Mass. 532, 122 N. E. 739. And see *In re Harraden,* 66 Ind. App. 298, 118 N. E. 142.

Judgment affirmed; costs to respondent.

Holden and Wernette, JJ., and Sutphen and Rice, D. JJ., concur.