(No. 6386.   February 16, 1937.)

JUANITA DUTSON, Respondent, v. IDAHO POWER COM-
PANY, Appellant.

[65 Pac. (2d) 720.]

James L. Boone for Appellant.

Z. Reed Millar, for Respondent.

AILSHIE, J.—This case was submitted to the Industrial Accident Board on a stipulation of facts agreed to between the parties, the pertinent facts of which are stated as follows:

"That the said Joseph W. Dutson on November 2nd, 1935, was in the employ of the Idaho Power Company, doing rock work in the construction of the said hydro-electric plant and

had so worked since July 3rd, 1935. That the place of employment where deceased actually worked was in the construction of said hydro-electric development on said Snake River, the physical surroundings of which place are described a. follows:

"Such development or project includes two dams on the river bed, above the twin falls on the river, and a plant building immediately below the southerly one of said falls. The construction camp buildings, including the camp office, are situated upon a strip of bench land bounding the river channel about sixty feet higher than the river bed and place where the deceased actually worked. Southerly and westerly from the river and camp buildings for about a fourth mile there is a cove in the Snake River Canyon in which the level of the land slopes upward about 100 feet to the rock wall of the canyon, said canyon wall rising sheer about 200 feet to the rim rock above which is the general level of the country side surrounding said place.

"In other words, the said Snake River runs in the bottom of a canyon or gorge at this point which is approximately 260 feet deep measuring from the general level of the country side on either side of said gorge. The only means of access to said construction site, and the only roadway or pathway leading thereto, was a private road built, owned, and maintained by said employer, for said construction purposes and the future operation and maintenance of the power plant under construction, which road began at a public road about one-half mile southwesterly from the rim of said canyon, and led from said public road easterly for about one-fourth mile over private land on which said employer had an easement for said private road, to the land owned by the employer, at which point the said private road turns northerly to the rim of the said canyon. At said rim said road turns abruptly easterly and southerly and descends down the canyon side, running thence below the said rim rock wall to where were located the construction camp offices above mentioned, at which place the road ends.

"This road, at the time of the accident, was used alike by the employer, employee, and members of the public having occasion to travel to and from the construction work,

and the scene of the same, but the said road had not been dedicated as a public road, and from the point beyond the rim of the canyon to the construction camp offices was entirely situated upon the employer's premises.

"For a distance of about 500 feet from the top of the canyon down the canyon side on said private road, the grade of said road is very steep and along this distance the said roadway is edged by a rock wall or parapet about 2 feet wide and 2 feet high, made by piling the lava rock from said road along its outer edge.

"On the morning of November 2nd, 1935, there had been a snow fall and the surface of said road was covered with snow.

"The said Joseph W. Dutson lived approximately one-fourth mile southwesterly of the rim of said canyon on land not belonging to employer but which bordered that portion of employer's road for which employer had obtained the easement hereinbefore referred to.

"The employer did not provide any means of transportation to and from the place of employment. The method of transportation to and from said place of employment were left entirely to the employee. The employee, at the time of this accident, was not on any special errand to be rendered' for or on behalf of the employer, or in connection with his employment, and was under no restriction of any kind as to method of travel, but was following the only roadway and means of access to get to his work for the day, which was the private roadway owned and maintained by the employer as aforesaid.

"At approximately 7:45 o'clock A. M., on November 2nd, 1935, the said Joseph W. Dutson, at a point where the place in which he lived bordered on the said private road, accepted an invitation of one H. C. Turman to ride to the place where he was to begin his day's work at said construction site, which was to commence at 8:00 o'clock A. M. The said Turman was driving a Dodge automobile, which automobile did not belong to, and was not subject to the control of either the said Dutson or the employer.

"Turman was employed on the said construction project but was in the employ of the Morrison-Knudson Company,

who were sub-contractors of said employer in said construction. While proceeding to the place of employment in said car so driven by said Turman, they came to the rim of said canyon and proceeded down the grade of said road so constructed by said employer, to a point approximately 200 feet along the road below the rim rock, or top of the canyon wall where said road edges the said canyon wall, which point is approximately 2,675 feet by the road to the place of work where said employee actually worked and on premises belonging to employer, where said Turman applied his brakes, and the said automobile skidded around and overturned. It came to rest on the outer edge of the grade, allowing enough room for a car to pass between it and the canyon wall, and the said Dutson and the other occupants of the said car were pinned beneath it.

"While the said car was so overturned, one Claude Schooler, an employee of the Idaho Power Company, who was driving his own car going toward said place of employment, passed said overturned car and proceeded some distance below said car to the bottom of said grade, where they parked the Schooler car and came back to the scene of the accident. They lifted the overturned car and Dutson and the other occupants crawled out, apparently unhurt.

"While said parties were standing in the road in the clear of traffic another car rounded the bend at the rim of the canyon and started down the road, traveling at a rather fast rate of speed. The said car was driven by Harry L. Fosnot, who was an employee of the said Morrison-Knudson Company, and who was traveling down the grade to his place of employment. Upon discovering the accident, Fosnot sounded his horn about fifty feet from the overturned car, and applied his brakes, which upon the snowy surface of the road, caused his car to slip around so that he passed the overturned car and as he came below said overturned car, his car skidded out toward the outer edge of the said grade, toward the said Schooler, Harry Thomas, and Dutson, who were standing on the outer edge of the grade.

"The said Fosnot car imperiled all three of said men. Schooler and Thomas were able to save themselves from the on-rush of said car but Dutson was either hit by said car, or

lost his balance, or the rock that he grabbed came loose, and he fell off the brink of the said grade to the bottom of the canyon, a distance of approximately 74 feet, and as a result of said fall, received injuries to the left chest, both anteriorly and posteriorly, and lacerations and bruises about his entire body and head, from the result of which he died at approximately 9 :15 A. M. on said day.''

The Industrial Accident Board made an award to respondent, Dutson's widow. From a judgment in the district court, affirming the board's award, this appeal has been taken.

For the purpose of arriving at a correct legal conclusion as to liability, upon the facts of this case, we should and will, for reasons hereafter to be stated, dismiss and disregard the occurrence and incidents of the first accident. We then find the workman standing in front of a standing car on this private roadway, when the Fosnot car approached over this same private way, skidded and caused the accident to, and consequent loss of life of, the workman. The workman was on his way to the place where he must work; he was on the premises of his employer as invitee and licensee, traversing the only passageway available and one furnished by the employer for such purpose. Without the use of this roadway he could not have reached the place of his work. It seems to follow, as an unavoidable, logical and legal conclusion, that at the time of his injury he was in the employ of his employer; he was doing what his employer expected him to do. He was clearly making a trip over a passageway contemplated by, and included in, the terms of his employment. (*Industrial Com. of Ohio v. Barber*, 117 Ohio 373, 159 N. E. 363, 365; 1 Schneider's Workmen's Comp. Law, 2d ed., sec. 267, p. 779.)

It may be urged in reply that but for the accident to the car in which he rode down to the point of the accident, he would not have been struck by the Fosnot car, and the latter accident would not have occurred. The answer to that contention is that the employee had a right to employ any reasonable means of transportation over this roadway that might be said to be fairly contemplated by the employer in constructing and maintaining it. He reached the point where

he was standing in safety, even though not without hazard, and was on foot ready to pursue the remainder of the trip. While thus situated he met with the casualty which proved fatal. That he had a right to be upon, and traverse, this roadway, is beyond doubt. But now it is contended that the employer is not liable, because the agency (car and driver), which caused the injury to the employee, was not under the control, direction or supervision of the employer, even though the car was being driven on the employer's premises. The means thus employed were clearly contemplated by the employer in the construction of this private way, usable and traversable generally by automobiles operated by employees and others.

The hazards and dangers to the employee upon this roadway, arising from passing over it, in going to and from his work, were not the selection or independent choice of an employee who may freely choose between a safe and dangerous way or means of reaching his work, or between two or more ways or means of different degrees of hazard. In the case before us refusal of the employee to travel over this private way furnished by the employer would have deprived the workman of his job and the employer of the services of the workman, all due to the lack of any other way or means of reaching the place of work. Here the element of choice by the employee was wholly absent. The circumstance, that the workman had made the trip from his home to the place where the accident occurred, in another car, has no legal bearing on the case. The workman was on the roadway where he had a right to be and the standing car by the roadside was not his nor was it placed there by him. If the presence or condition, or both, of the standing car, was in any way or manner a contributing cause to the accident (which does not appear to be the case), it was certainly not in any respect of the workman's making. If, however, it be said that this was in fact and in every way, but in law, a public way, because the public was in fact allowed to travel over it, the answer still adheres that it was the private property of the employer's making, over which it had sole and exclusive control and the right to exclude the public from using.

■■ We are not committing ourselves to any hard-and-fast rule of law on this subject, for as said in *Burchett v. Anaconda Copper Min. Co.*, 48 Ida. 524, 531, 283 Pac. 515:

"In determining questions of this kind, each case must be decided with reference to its own attendant circumstances; . . . . under a liberal construction of the Workmen's Compensation Act, to effectuate its intent and purpose."

Nor are we prepared to hold that every accident, which might occur on a private roadway of the employer, while the workman may be going to and from his work, would be compensable.

We are not unmindful of the fact that much has been said by the courts, and much authority exists on the issue as to *where* or *whether* an accident, which happens while the employee is going to or from the place of his work "arises out of and in the course of" his employment. A study of the cases satisfies us that any apparent confusion that may arise is not due to uncertainty of the rule of law, but is rather due to the multitudinous variety of facts and the consequent difficulty of determining just when they bring the case *within* or leave it *without* the rule; i. e., when it may be said that the accident arose out of and in the course of the employment and when it did not.

In *Logue v. Independent School Dist. No. 33*, 53 Ida. 44, 21 Pac. (2d) 534, and *Murdoch v. Humes & Swanstrom*, 51 Ida. 459, 6 Pac. (2d) 472, this court enumerated a state of facts under which we held that liability for compensation attached. In *Walker v. Hyde*, 43 Ida. 625, 253 Pac. 1104, while the majority of the court reached the conclusion that the facts there involved were not compensable, still both the majority and minority opinions recognized the rule stated in *Logue v. Independent School Dist.*, supra, the majority opinion saying:

"Under the *facts in this case* it is not material that the accident occurred on the premises where the operations were being carried on, *unless it was over a way provided by the employer, which the employee was required to travel, so that he was under the domination of the employer.*"

We have italicized a part of the foregoing quotation to call attention to the fact that the majority opinion in that case recognized the force of the rule we are applying in this case. The dissenting opinion in that case stated the rule as follows:

"The general rule is that an injury occurring to an employee going to or from his work does not arise out of his employment. Various exceptions, however, have been recognized, based upon different grounds—for instance, that the employee is on the master's premises immediately adjacent to the actual place of employment; going or returning in a conveyance furnished by the employer; *traversing the only means of ingress or egress, whether furnished by the employer or by others, but used with the employer's knowledge and consent; . . . . The road was the common way, and, . . . . the only way provided for him to travel on his way to work.* If he had not been so employed and if he had not been on his way to work—in other words, if he had not been engaged upon his master's business, though it was preparatory to his actual employment—the accident would not have happened to him as an employee; hence the accident arose out of the employment."

In *State v. Clearwater Timber Co.*, 47 Ida. 295, 274 Pac. 802, 67 A. L. R. 1396, the accident occurred on a public railroad crossing and not upon a private way under the control of the employer; and still other facts distinguish that case from the case under consideration.

Appellant insists that "an analogy [to this case] is found in *Industrial Commission of Colorado v. Enyeart*, 81 Colo. 521, 256 Pac. 314." In the first place, we do not think the facts of that case apply here. There the employee had selected his own car to drive from the place of employment and "The proximate cause of the accident was a defect in the automobile which the claimant had chosen as a means by which to leave the premises. The employer had nothing to do with it." In the second place, we do not think the court meant to commit itself literally to the statement that, "unless everything that happens while he [the employee] is on the employer's premises is caused by the employment," the ac-

cident does not arise out of and in the course of his employment.

The judgment is affirmed with costs to respondent.

Holden and Givens, JJ., concur.

MORGAN, C. J., Concurring.—I am in accord with all the foregoing opinion save and except the following:

"The workman was on the roadway where he had a right to be and the standing car by the roadside was not his nor was it placed there by him. If the presence or condition, or both, of the standing car, was in any way or manner a contributing cause to the accident (which does not appear to be the case), it was certainly not in any respect of the workman's making. If, however, it be said that this was in fact and in every way, but in law, a public way, because the public was in fact allowed to travel over it, the answer still adheres that it was the private property of the employer's making, over which it had sole and exclusive control and the right to exclude the public from using."

If that part of the opinion means to fix the blame for the accident upon the employer and to absolve the employee from fault therefor (and its language suggests no other meaning) it has no proper place in a workmen's compensation case. The employee was killed by accident arising out of and in the course of his employment and his dependent widow is entitled to compensation regardless of whether the accident was caused by the negligence of the employer, the employee, a third person, or whether it was caused by negligence at all. If the automobile standing in the road was the cause of the accident, it is immaterial who it belonged to or who was to blame for its being there. The fact that the automobile which skidded and crowded the employee over the cliff belonged to and was driven by an invitee of the employer, has no bearing. Neither negligence nor contributory negligence is to be taken into consideration, for the workmen's compensation law provides compensation for injured workmen and their families and dependents regardless of questions of fault. (I. C. A., sec. 43–902.)