NEVADA INDUSTRIAL COMMISSION, Appellant, v. BEULAH H. LEONARD and JOHN D. LEONARD, Her Husband, Respondents.

No. 3164

May 28, 1937.

68 P. (2d) 576.

*George L. Sanford,* for Appellant:

18

*J. A. Sanders* and *Wm. McKnight,* for Respondents:

## OPINION

By the Court, TABER, J.:

This is an appeal from a judgment of the Second judicial district court, Washoe County, department No.

2, and from orders of that court refusing to modify the findings of fact and denying a motion for new trial. Appellant was defendant in the court below. John D. Leonard was joined as a party plaintiff because he was the husband of plaintiff Beulah H. Leonard.

On the morning of April 9, 1934, Mrs. Leonard, a teacher employed in the public school at Gerlach, while walking home from her home to the school, fell, breaking her hip. Her claim for compensation was denied by the industrial commission, whereupon suit was brought in said district court, which, after trial without a jury, rendered judgment, awarding compensation to plaintiffs in the sum of $5,341.79. It was stipulated at the trial that said amount should be awarded in the event plaintiffs recovered judgment.

The public school buildings at Gerlach are situated on land leased from the Western Pacific Railroad Company. The school grounds are inclosed by a wire fence, in which the only openings are gates affording entrance to and exit from the school grounds. The inclosure around the school buildings is 304 feet long and 159½ feet wide. The school grounds and buildings run in a general northeasterly and southwesterly direction. In entering the grounds, one goes in a northwesterly direction. In speaking of the aforesaid directions, it is the custom of the residents of Gerlach to designate the southeasterly fence of the inclosure as the south, the opposite fence as the north, and the two end fences as east and west, respectively. For the sake of brevity, the latter designations will be used herein. The actual inclosure around the school buildings does not conform to the boundaries described in the lease. The fences are somewhat to the north and west of the corresponding lines of the parcel of land described in the lease. The greater part of the ground described in the lease is included within the fencing actually inclosing the school grounds.

No plat of Gerlach has been filed with the county recorder of Washoe County, and the thoroughfares used

by the public are not named. No formal dedication of said thoroughfares has ever been made. The school grounds and buildings are on the north and east outskirts of the town, and there are several thoroughfares approaching them from the south and west. These thoroughfares serve the same practical purposes as would legally platted and dedicated streets. There are no pavements or cement sidewalks at Gerlach.

The home of the Leonards was about a quarter of a mile, or perhaps a little more, in a southwesterly direction from the school—"about ten minutes' walk." At about 8:30 a. m., or perhaps a few minutes before that time, on the morning of said 9th day of April 1934, Mrs. Leonard left her home for the sole purpose of going to the schoolhouse, there to make preparations for teaching her classes and to ring the school bell at 8:45. The teachers were expected to arrive at the schoolhouse each morning about 8:30. Along the south fence of the inclosure around the school grounds, and just outside thereof, there is an open road or thoroughfare without sidewalks or pavement. According to Miss Armbruster, this was "the only place to walk or drive cars in approaching the school gate from the west." There were numerous stones in and upon the ground along this thoroughfare, and indeed in that vicinity generally. Most of these stones were wholly embedded in the ground, but many of them projected above the surface. There were also many stones lying loose on the surface of the ground.

Accompanying Mrs. Leonard were her eleven-year-old twin daughters, who were pupils in the seventh grade. After Mrs. Leonard and her children had passed the southwest corner of the school grounds, and while they were walking between that point and the entrance gate, the heel on her left shoe slipped on one of the stones and she fell to the ground, breaking her hip. The accident happened less than 10 feet distant from the south fence, and while Mrs. Leonard and her children were walking in the customary and natural place on their way

to the entrance gate. There was some testimony that the accident happened within the boundaries of the land leased to the Gerlach school district, as said land is described in the lease hereinbefore mentioned; but in our opinion the trial court was correct in its finding that the accident happened on ground not included within said leased land, nor within the actual wire fence inclosure of the school grounds. As we read the record, the testimony indicates clearly that the accident happened from 10 to 15 feet west of the west boundary of the land as described in the lease. This would place the scene of the accident at a point approximately 40 feet east of the southwest corner of the actual school inclosure, and approximately 125 feet west from the gate, which at that time was the only place used as the entrance to and exit from the school grounds.

It was between 8:35 and 8:40 a. m. when the accident happened. At the time of the accident, and just prior thereto, two boys were on the school grounds, one of them playing with a basketball and the other at the giant stride. Mrs. Leonard testified that she was watching these boys just prior to, and at the time of the accident. "I was watching the conduct of children on the way to school, watching the conduct of the children on the school grounds and going to the school to prepare lessons, as well as watching the school property and children in the school grounds and in the school building." Besides Mrs. Leonard's daughters and the two boys playing on the school grounds, there was a little girl "coming to school, playing around the schoolhouse." After the accident, this little girl helped one of Mrs. Leonard's daughters pick up some of the papers dropped when she fell.

On cross-examination, Mrs Leonard testified that as she was going along near the fence that morning she was watching her step in order to avoid the rocks. "Q. And you were watching your step at the time this accident occurred? A. Yes."

As Mrs. Leonard came along by the fence just before the accident, she saw another teacher, Mr. Lucas, enter the school buildings, and the other teacher, Miss Armbruster, was the first person to come to where she was lying immediately after the accident. In approaching the school grounds, Mrs. Leonard was following her customary pathway, because, as she testified, "it was the least covered with rocks."

Mrs. Leonard was the high school teacher, but besides teaching history, Latin, and English in high school, she also taught history to the fourth, fifth, sixth, and seventh grades in the elementary school.

In leaving her home on the morning of the accident, it was Mrs. Leonard's intention to do just what she had been accustomed to doing in the past while employed as a teacher in the Gerlach school; that is, to observe the children along the way, to prepare for her classes upon arrival at the schoolhouse, and to ring the school bell at 8 : 45.

■ Because Mrs. Leonard, on cross-examination, testified that at the time of the accident she was "watching her step," appellant argues that she could not at the same time have been observing children on the school grounds or on their way to school. This does not appeal to us as being a fair construction of all the testimony, which, in our opinion, justifies the finding of the trial court that, besides walking carefully, Mrs. Leonard was watching the two boys playing on the school grounds.

There is left for our consideration the single question whether Mrs. Leonard's injury arose out of and in the course of her employment.

Section 1 of the Nevada industrial insurance act (section 2680 N. C. L. 1929) reads: "When, as in this act provided, an employer shall accept the terms of this act and be governed by its provisions, every such employer shall be conclusively presumed to have elected to provide, secure and pay compensation according to the terms, conditions, and provisions of this act for any

and all personal injuries by accident sustained by an employee arising out of and in the course of the employment; and in such cases the employer shall be relieved from other liability for recovery of damages or other compensation for such personal injury, unless by the terms of this act otherwise provided."

■ The Gerlach school district accepted the terms of said act some time prior to the accident involved in this case. We are satisfied that at the time of the injury the school district was an employer and Mrs. Leonard an employee, as those terms are used in sections 7½ and 7½(a) of said act (section 2688 N. C. L. 1929).

Section 39 of the act concerning public schools (section 5687 N. C. L. 1929) provides that every teacher in the public schools shall: * * * 5. Hold pupils to a strict account for their conduct on the way to and from school, on the playground, and during any intermission."

Appellant relies chiefly on its third and fourth assignments of error. In said third assignment, appellant contends that the district court erred: "In making the findings of fact on insufficient evidence and with no substantial evidence in support thereof and against the evidence. In finding as a fact that at the time and place of the injury Beulah H. Leonard, plaintiff, was doing something reasonably incident and proximate thereto in point of character, time and place."

In said fourth assignment of error appellant complains that the trial court erred: "In concluding as a matter of law, contrary to law and against law, that the said plaintiff's injury (1) happened in the course of employment and also (2) arose out of employment."

The positions of the respective parties have been fully and ably presented by counsel. Many of the cases cited have not been helpful because of the absence of a statutory provision such as that hereinbefore quoted from section 5687 N. C. L. 1929. On the other hand, some of the cases cited in behalf of respondents have been of little assistance, for the reason that this is not a

"special mission," "special service," "special errand," or "emergency call" case.

A case presenting facts very similar to those in this case, and a statute similar to the Nevada prescribing the duties of public school teachers, is that of Logue v. Independent School District No. 33, 53 Idaho 44, 21 P. (2d) 534, 535.

In that case it appeared that a school teacher, while walking from her home to the schoolhouse, about one and one-half blocks, fell and broke her hip. The sole question in the case was whether the accident arose out of and in the course of her employment as school teacher. Amongst other things, the evidence showed that on the morning of the accident the weather was stormy and snowy, and the sidewalks slippery; that the teacher was going to the schoolhouse to begin her duties in the schoolroom; that immediately prior to and at the time of the accident she was watching some school children who were snowballing; and that, while their conduct was not such as to call for a reprimand or a report in regard thereto, she was watching their conduct, and was also on the lookout to observe any other pupils on their way to school.

The Idaho statute (Code Idaho, 1932, secs. 32–1003) required school teachers to "* * * 'hold pupils to a strict account for disorderly conduct or improper language in or about the building, on the playgrounds, and on the way to and from school."

In the course of its opinion the court, in Logue v. Independent School District No. 33, supra, said: "Even though respondent did not at the time find it necessary to discipline any pupils, or notice conduct which would require a report, she was in a position to do so, and was engaged in observing school children for that purpose, and the circumstances in the two authorities following are sufficiently in point to support the conclusion that she was within the scope of her employment, and actively engaged in her duties expressly imposed upon her by the

statutes and the rules, Colorado Contracting Co. v. Industrial Commission, 74 Colo. 206, 219 P. 1075; Empire Health & Acc. Ins. Co. v. Purcell, 76 Ind. App. 551, 132 N. E. 664, and that the accident arose in the course of, and out of her employment, Zeier v. Boise Transfer Co., 43 Idaho 549, 254 P. 209; Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S. W. (2d) 128."

■■ We are clearly of the opinion that the Nevada statute requiring public school teachers to hold pupils to a strict account for their conduct on the way to and from school, and on the playground and during any intermission, imposes upon such teachers, not merely the duty of disciplining pupils after learning of any misconduct on their part, but the further duty of observing their conduct to the end that they may be properly dealt with in the event of any misconduct. It is not sufficient under this statute, that teachers apply disciplinary measures to pupils whose misconduct may be reported to them or may come under their observation by mere chance. The duty of teachers, under said statute, extends further than this, and they must, to a reasonable extent, watch the pupils for the purpose of seeing to it that their conduct, while on their way to and from school, on the playgrounds, and during all intermissions, is proper.

■ Appellant calls our attention to sections 3 (a), 21 (a), 21 (b), and 22 (a) of the industrial insurance act (sections 2683, 2702, 2703 N. C. L. 1929). It contends that the hazards of a teacher's service are to be determined from the industrial commission's classification of risks with proportional rates of premiums based thereon. It introduced in evidence the following schedule of premium rates: "State, counties, schools and cities, compulsory. Elective or appointive offices and all employees exposed to transportation hazard a total of ninety-six cents per hundred dollar payroll. That is sixty cents for the compensation and thirty-six for the medical benefits. Clerical employees not exposed to transportation hazards,

total forty cents per hundred dollar payroll, twenty-five for compensation and fifteen for the medical. Professors, teachers, and clerical, total of forty, twenty-five cents for compensation and fifteen cents for medical benefits."

Appellant points out that the industrial commission act is a contract binding upon the state and upon employers and employees who accept its provisions; also that the remedies provided in that act are exclusive. According to appellant, the classification of rates for school teachers constitutes a delimitation of the hazards of that particular employment against which the employee is insured, that is, the hazards which can be said to arise out of the employment, and Mrs. Leonard, as appellant urges, was not protected by transportation hazards.

We are unable to perceive how transportation hazards enter into this case at all. Mrs. Leonard at the time of the accident was not being transported to the schoolhouse, nor was any vehicle responsible for her injury. It was simply the result of a fall while she was walking from her home to the schoolhouse.

We think that the trial court reached the correct conclusions, both as to the facts and the law.

The judgment and orders appealed from are affirmed.