(No. 6745.   November 25, 1939.)

HARRY SKEEN, Respondent, v. SUNSHINE MINING COMPANY, a Corporation, Appellant.

[96 Pac. (2d) 497.]

H. J. Hull, for Appellant.

Albert J. Graf, for Respondent.

AILSHIE, C. J.—This is an appeal from an order of the Industrial Accident Board awarding compensation to respondent for injuries received by him as an employee of appellant company while engaged in the course of his employment. The facts necessary to an understanding of the issue involved here, are covered by a stipulation entered into between claimant and appellant through their respective attorneys at the hearing before the board. The stipulation is as follows:

"The defendant will stipulate that the claimant, Harry Skeen, sustained an injury at about the hour of ten twenty-five P. M. on the third day of March, 1939, consisting of a fracture of the neck of the right femur; that he was treated by Dr. G. E. McCaffery, and Dr. R. E. Staley of Kellogg, Idaho; that the fractured femur was brought into place and fixed in place by a treatment known as the Smith-Peterson nailing; that the claimant was totally disabled as the result of said injury since the third day of March, 1939, and is now totally disabled as a result thereof and it cannot be determined at this time when he will be surgically healed or whether or not he will sustain any degree of permanent partial disability; that the claimant is now able to be up and about with the use of crutches.

"The defendants further stipulate that the injury was caused by the claimant slipping and falling on a roadway on the defendant's property, which roadway, at the time, was covered by snow and ice, and which roadway led from a public county highway to the defendant's plant where the claimant was employed; that the accident occurred about six or eight feet off from the county road and on the property of the defendant.

"Defendant will further stipulate at the time of the accident claimant lived in the city of Kellogg, approximately six miles west from the Sunshine Mine and that on the occasion of his injury he rode from Kellogg to the property of the

Sunshine Mining Company in the automobile of a fellow-workman, to-wit the automobile of M. R. Hollingsworth; that this means of transportation was arranged by the claimant for his own convenience and was not one that was arranged for him or provided by the defendant and that the defendant exercised no control over his means of transportation to and from work; and that defendant provided no means of transportation for employees on the particular shift upon which the claimant was working.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"It is further stipulated that there are several entrances to the defendant's property on the county road and that neither the claimant nor any of the other employees were or are directed or required to use any particular entrance but are permitted to select which entrance they choose for themselves.

"It is not to be understood by this stipulation that the defendant does stipulate or agree this accident arose out of or in the course of claimant's employment.

Mr. SUPPIGER: "I presume you will stipulate the man was married, with no children, at the date of the accident and that he earned $5.00 a day and worked six days a week?

Mr. HULL: "That is admitted by the answer, Mr. Suppiger."

The board ruled and held that the accident arose out of and in the course of claimant's employment; that he was "entitled to an award against the defendant, Sunshine Mining Company for compensation at the rate of $13.10 a week from the 3rd day of March, 1939, to and including the 19th day of July, 1939, and thereafter until he is surgically healed, but for a period of not to exceed 400 weeks," etc.

It is conceded and so stated in appellant's brief that,

"The sole question involved here is whether the accident arose out of and in the course of respondent's employment.

"This case squarely presents the question of whether or not an injury is compensable when received by an employee while going to or from work over one of several available roadways on the employer's property and while not engaged

in the performance of any act directly or casually connected with his employment.''

In support of the contention of appellant as above stated, we are cited to the cases of *Neale v. Weaver, ante,* p. 41, 88 Pac. (2d) 522, *Dutson v. Idaho Power Co.,* 57 Ida. 386, 65 Pac. (2d) 720, *In re MacKenzie,* 55 Ida. 663, 46 Pac. (2d) 73, *Logue v. Independent School Dist. No. 33,* 53 Ida. 44, 21 Pac. (2d) 534, *Murdoch v. Humes & Swanstrom,* 51 Ida. 459, 6 Pac. (2d) 472, *Burchett v. Anaconda Copper Min. Co.,* 48 Ida. 524, 283 Pac. 515, and *Walker v. Hyde,* 43 Ida. 625, 253 Pac. 1104.

We may very well note the distinction between these cases and the case under consideration, by a brief reference to the Neale-Weaver case. There Neale, the employee, was injured during the noon hour when he was not on duty for the employer and while he was cranking his own automobile which he had parked on the premises of the employer. He was not engaged in anything in any respect connected with or affecting the business of the employer or in any way relating to the services for which he was employed. While cranking the auto, he received a puncture of the thumb which constituted the accident from which the injury resulted. This court held that the accident, having occurred under the circumstances as there disclosed, although on the premises of the employer, did not ''arise out of or in course of the employment'' for which he was engaged by the employer.

*Dutson v. Idaho Power Co., supra,* approaches the liability for the accident from the opposite angle. There the employee was killed while on his way to work but before he reached the place of work for which he was employed. He was on a private passageway from the highway to the place of work and on the only way possible for him to traverse in order to reach the place of employment. The court held that the employment necessarily contemplated and included travel over this passageway and was an implied part of the contract of employment. The other cases cited and relied on by appellant may well be distinguished as falling on one side or the other of the line of demarcation between the Neale-Weaver case and that of *Dutson v. Idaho Power Company, supra.*

Here it is stipulated "that there are several entrances to the defendant's property on the county road and that neither the claimant nor any of the other employees were or are directed or required to use any particular entrance but are permitted to select which entrance they choose for themselves." Now, in view of this state of facts, it seems clear that if the employer can escape liability in this case on the ground that the choice of passageway was left to the employee; and the exercise of such choice was not in the course of his employment, but was at the risk of the employee, it could likewise escape liability in case of accident to another employee for selecting *one of the other passageways*. It is not believed that such a building would be sound or in keeping with the spirit and intent of the Workmen's Compensation Law. We are, on the contrary, persuaded that under the law it is our duty to hold that in such a case as this, where the employer maintains several passageways to the place of work, through or over which the employees may go in entering on their work, the workman will not hazard his right to compensation in case of injury from accident happening on whichever way he may select. If any one of the ways is dangerous or too hazardous, the duty of selection should be that of the employer, since he can close any one or forbid its use. He has the power of inspection and the right to make repairs and to regulate the use of instrumentalities on his premises.

Complaint is also made here of the fact that the employee, in order to get a ride with a fellow workman, arrived on the premises 30 minutes before 11 o'clock, the commencement time of his shift; and he was therefore not yet on duty nor required for duty at that time, and was in effect a loiterer on the premises. Respondent and Hollingsworth with whom he rode both worked in the same shift (the "graveyard shift"), the former in the "Dry" house, where he did not have to change his clothes; and the latter underground, which necessitated his changing his clothes before going into the mine. It was therefore necessary for Hollingsworth, the underground worker, to arrive before 11 in order to change clothes; whereas respondent could not get a ride unless he came along some 30 minutes ahead of the commencement

of the shift. It appears, however, that in his case he was accustomed to relieve the man on duty in the Dry house as soon as he arrived, even though the ''graveyard'' shift had not started.

It seems clear that a workman may and sometimes should arrive at the place where he is to work *some period of time before his actual labor is to start*. The reasonableness of the period of time allowable in such cases depends on the circumstances of the employment, i. e., the place of work, the character of the work, the distance to be traveled in going to the work, the hazards or chances of delay on the way, means of conveyance, and possibly other contingent circumstances. In *Bristow v. Department of Labor and Industries*, 139 Wash. 247, 246 Pac. 573, the Washington Supreme Court said:

''It will not do to lay down a hard and fast rule that an employee who arrives at his place of work 35 minutes before the time contemplated to commence the actual labor under his employment is not a workman until the whistle sounds; nor can it be said just how long a time the employee may be permitted upon the plant before the whistle blows. There are many facts and circumstances which might make the time in one case very unreasonable, while in another it would be quite reasonable. In the instant case the decedent came to his work in an automobile. It is important and necessary that all employees be on time for their various avocations. It is one of the essential qualifications of a good employee. A good employee is always a prompt employee. If the decedent had been delayed by a puncture, blowout, or other minor trouble to his automobile, he might very well have been delayed beyond the usual starting time of the plant.''

We do not think respondent acted in an unreasonable manner in arriving at his place of work thirty minutes ahead of the beginning of his shift. We are constrained to observe here that this case is a good illustration of the many difficulties that confront the board in determining these border-line cases, wherein it is enough to tax the wisdom of a Solomon to determine *on just which side of the dividing line the facts of the given case require the decision*. To the board it may seem reasonably clear that it falls on the one side,

while to counsel or the appellate court it may seem to fall on the other. In such case, however, the Constitution admonishes us that "On appeal from orders of the Industrial Accident Board the court shall be limited to a review of questions of law." (Sec. 9, art. 5, Const., as amended by vote of the people at the 1936 election; 1937 Sess. Laws, p. 499.)

We think the evidence supports the findings of the board and its order should be affirmed, and it is so ordered. Costs awarded to respondent.

Budge, Givens, Morgan and Holden, JJ., concur.