(No. 6764.   October 22, 1940.)

C. G. CLOSE, Respondent, v. GENERAL CONSTRUCTION COMPANY and STATE INSURANCE FUND, Appellants.

[106 Pac. (2d) 1007.]

690

Clarence L. Hillman, for Appellants.

E. B. Smith and Carroll F. Zapp, for Respondent.

AILSHIE, C. J.—Respondent, a married man, was employed by the General Construction Company, appellant, in highway construction work in Nez Perce county. April 11, 1931, during the regular course of his employment, a falling tree struck respondent causing a compound fracture of his right leg. Appellant was notified of the accident and injury and, April 29, 1931, claim for compensation was filed with the Industrial Accident Board. From the date of the accident to November 12, 1931, a period of 30 weeks and 6 days, respondent was totally disabled, during which time he was provided with medical and hospital attendance, and was paid compensation at the rate of $13.10 per week, totalling $406.10.

January 15, 1932, the parties entered into a compensation agreement, approved by the accident board, whereby appellants paid respondent compensation "for his estimated permanent partial disability for work, suffered comparable to 60% of the loss of one leg at the ankle joint, being 99% of 62½ weeks at $13.10 per week, totalling $810.56." Summary and award, based on the agreement, was approved by the board January 21, 1932.

January 21, 1939, a change occurred in respondent's condition, due to the impairment of circulation in the right foot and leg below the knee. On account of the change in condition, it became necessary, March 10, 1939, to amputate respondent's right leg about four inches below the knee. June 12, 1939, respondent was surgically healed, with a permanent partial disability resulting from the loss of the leg by amputation. It was necessary to secure additional medical, hospital, nursing and other expenses in the sum of $461.13, together with the sum of $269.80 (compensation for total temporary disability for work from January 21 to June 11, 1939) which liability appellants have agreed to assume.

August 24, 1939, counsel for the respective parties entered into a stipulation, agreeing to the above facts as stated, but being unable to agree as to the amount of compensation to which respondent is entitled on account of the amputation of his leg,—claimant insisting that he is entitled to compensation as provided in section 43–1113, I. C. A., for 99 per cent of 140 weeks at $13.10 per week, without deducting the amount previously paid under the terms of the former agreement, namely, *99 per cent of 62½ weeks at $13.10 per week;* and appellants insisting that the latter amount should be deducted from 99 per cent of 140 weeks at $13.10 per week. Upon the stipulated facts, the matter was submitted to the board for decision. September 15, 1939, the board entered the following award:

"WHEREFORE, IT IS ORDERED, AND THIS DOES ORDER, That the claimant, C. G. Close, be, and he hereby is, awarded against the defendants, General Construction Company, employer, and State Insurance Fund, surety, and each of them, compensation for his permanent partial disability at the rate of $13.10 a week for a period of 99% of 140 weeks, and for compensation at the rate of $13.10 a week from the 21st day of January, 1939, to the 11th day of June, 1939, and for the further sum of $461.13.

"IT IS FURTHER ORDERED, AND THIS DOES ORDER, That the defendants, General Construction Company, employer, and State Insurance Fund, surety, and each of them, immediately pay to the State Treasurer to be deposited in the Industrial Special Indemnity Fund the sum of $36.68." From the above order, in so far as the same allows respondent compensation "in excess of 99% of 77.5 weeks at $13.10 per week; and the sum of $36.68 to the State Treasurer" for deposit in the special indemnity fund "in excess of $20.30," defendants have appealed.

The sole question to be decided on this appeal is: Can the employer and insurance carrier have a credit of the specific indemnity awarded respondent by the board in accordance with the compensation agreement for his then existing permanent disability, comparable to *50 per cent loss of one foot* by amputation, out of the subsequent specific indemnity award for the *entire loss of one leg* between the knee and ankle?

In other words: Must the board credit the compensation paid for *partial loss of leg* against a subsequent award for *total loss* (amputation) *of the leg?*

The answer to this inquiry must be found in the Workmen's Compensation Law, and particularly in section 43–1113. The latter section contains the schedule of indemnities and, among other things, says the workman shall receive

"For the loss of: . . . .

One leg between the knee and ankle. . . . . 140"

compensation allowance and, after enumerating a number of specific injuries, the statute adds:

"In all other cases in this class compensation shall bear such relation to the amount stated in the above schedule as the disabilities bear to those produced by the injuries named in the schedule."

Appellants place their chief reliance on the case of *State ex rel. Gilmore v. Industrial Commission of Ohio,* 127 Ohio St. 214, 187 N. E. 770. That was a case where the workman was injured and suffered the loss of sight of an eye and was compensated therefor under the Ohio schedule of indemnities, and thereafter *lost the eye by enucleation,* all resulting from the same accident. The court held that, upon the final award "for the loss of an eye" the employer and insurance carrier should be credited with the amount previously paid for the "loss of vision of the same eye" (25 per cent). The holding in that case, however, is not exactly applicable here, for the reason that the wording of the statute is slightly different and there was involved the construction as to the intent of the legislature which was implied from an amendment that had been made by the legislature in 1931, changing the original wording from "for the loss of an eye" to the words, "for the loss of the sight of an eye".

Respondent relies on *Leach v. Grangeville Highway Dist.,* 55 Ida. 307, 41 Pac. (2d) 618; 99 A. L. R. 1502n., a case wherein the claimant had suffered a 90 per cent loss of vision of his left eye, for which he was awarded and paid compensation. Later on, while working for the highway district, he suffered a further injury to the same eye, necessitating enucleation of the eye. The *same company was surety for both employers* and defended against the final award of compensa-

tion on the ground that a credit should be allowed against the *award for loss of the eye,* of the amount that had been awarded for *partial loss of the vision of the same eye.* This court held that credit should not be allowed, and among other things, said:

"Appellants' contention that there should be deducted from the award the amount paid respondent because of his partial loss of vision due to a former accident is based on the theory that he did not suffer total loss of his eye in the accident which befell him while employed by the highway district; that prior to his last accident he had lost, and had received compensation for, 90 per cent of the vision of his left eye and had but 10 per cent to lose. This contention cannot be sustained. Respondent is entitled to compensation, *not because of loss of vision* or of loss of earning power in consequence thereof. *He is entitled to specific indemnity for the loss* of his eye by enucleation, as provided for in I. C. A., sec. 43–1113.'' (Italics supplied.)

■■ As we have often observed, the compensation law provides a special remedy not known to the common law and the very act itself deprives the workman of his common-law right and provides these indemnities in lieu thereof. An analysis of the entire schedule of indemnities, as contained in section 43–1113, leads us to the conclusion that it was the intention of the legislature to grant the indemnity *for each specific injury there enumerated* and *comparable indemnities* for other cases not enumerated in the statute; and that each indemnity was intended to be separate and independent from every other indemnity. For illustration, take the arm: The statute specifically provides an indemnity for the loss of that limb "at or near the shoulder," also "at the elbow," also "between the wrist and elbow"; and then it starts with the hand and takes the fingers, joint by joint. The allowance is 240 weeks for the loss of an arm at or near the shoulder; and the number of weeks decreases, according to the loss, from that on down, to a final minimum of five weeks each for "one third finger at the distal joint" and likewise "one fourth finger at the distal joint".

If the improbable thing should happen, that a workman would lose his fingers, hand, and arm in the ascending scale

commencing with the lower one, until he finally lost the arm at the shoulder, and the employer was entitled to a credit each time for the amount paid on the previous loss, the aggregate would amount to more than four times the total allowed for the loss of the arm at the shoulder, before reaching the shoulder; all of which leads to the conclusion that it was not intended that credits should be made for the lesser indemnities where a larger one is subsequently awarded.

To give a more practical illustration: If a workman had lost one hand, for which he is entitled to 200 weeks indemnity, and later on lost the arm at the shoulder, which allows a 240 week indemnity, the credit would cut the indemnity for loss of arm down to only 40 weeks for that part of the arm between the elbow and the shoulder. We cannot believe the legislature meant any such thing.

Another thing that should be considered in this connection is the pain and suffering and physical and financial loss which the workman sustains by reason of one of these injuries. The legislature must have intended, in fixing this schedule of indemnities, to take into consideration in some measure all these elements, along with loss of earning power, going to make up the loss to a workman who loses a member of his body in the course of his employment. Here the compensation allowed for the impairment of claimant's leg, to the extent of 50 per cent, has no relation to its amputation and total loss. While the latter event is the result of the original accident and the injury, it is not the thing that was taken into consideration and determined the indemnity awarded in the first instance while the limb was still whole and intact.

The award appealed from should be and is hereby affirmed. Costs to respondents.

Budge, Givens, and Holden, JJ., concur.

Morgan, J., deeming himself disqualified, did not sit at the hearing nor participate in the opinion.