(No. 6893.   April 30, 1941.)

CECIL OLSON, Appellant, v. UNION PACIFIC RAIL-
ROAD  COMPANY,  a  foreign  corporation,  Re-
spondent.

[112 Pac. (2d) 1005.]

424

Alfred C. Cordon, for Appellant.

Geo. H. Smith, H. B. Thompson and L. H. Anderson, for Respondent.

AILSHIE, J.—Appellant, 18 years of age, with no dependants, was employed in the car department of respondent company at Pocatello. He "was helping other workmen construct an end gate of horizontal and perpendicular wood timbers for the body of what is known as a Hart-Convertible type sugar beet railroad car." The car was standing on the "rip track" in the railroad yards. September 13, 1940, while appellant was standing at the end of the car on which he was working and between it and a second car, the loosed end gate of the latter car fell, striking appellant on the back of his head, causing bruises

and lacerations and fracturing four front teeth in his upper jaw, which necessitated their extraction. September 24th notice of injury was filed; October 12th appellant filed claim and petition for hearing before the Industrial Accident Board. November 30th the matter was heard before two members of the board.

The Board found that all hospitalization, medical services and dental services and material received by claimant have been furnished to him by respondent and at its expense; that the claimant lost no time in his employment on account of the accident and that he continued working for respondent until October 5, 1940, when he voluntarily ceased work, to become a student at the University of Idaho, Southern Branch, specializing in the subject of chemistry;

"that, resulting from said accident, claimant now has a slight scar over his right eye and a slight scar near the bridge of his nose; that neither of said scars is very noticeable; that the dental bridge which claimant has in place of his four upper front teeth appears to be in excellent condition; that while claimant has sustained some facial disfigurement and some permanent injury as a result of said accident, such facial disfigurement and permanent injury do not diminish his ability to obtain employment in the kind of work he was doing at the time of his accident and under the evidence submitted, such permanent injury cannot be determined or estimated under the provisions of the Workmen's Compensation Law." Order was entered by the Board, denying the claim and dismissing the petition, from which claimant has appealed to this court:

The statute, sec. 43-1813, I. C. A., provides:

"Diminished ability to obtain employment owing to disfigurement resulting from an injury may be held to constitute partial disability."

Sec. 43-1113 of the code establishes a schedule of compensation for various injuries which is immediately followed by this sentence: "In all other cases in this class compensation shall bear such relation to the amount stated in the above schedule as the disabilities bear to those produced by the injuries named in the schedule."

The Board denied appellant's claim on the ground that the accident and resultant injury had not impaired his earning power, under sec. 43-1813, I. C. A.; and that he has suffered no physical impairment, since he has been furnished manufactured teeth just as useful and sightly as his natural teeth. Appellant maintains that the loss of three front teeth is, as a matter of law, a physical impairment and that it requires no other evidence to establish the fact that the deprivation of one's natural teeth results in a substantial loss to the victim in his future work.

We must approach the consideration of this case, having in mind the admonition of our statute (secs. 43-902 and 70-102, I. C. A.) and the repeated holdings of this court, to the effect that the provisions of the Workmen's Compensation Law must be liberally construed, with a view to effect its object and promote justice. (*Mc-Neil v. Panhandle Lumber Co.*, 34 Ida. 773, 786; *Ramsay v. Sullivan Mining Co.*, 51 Ida. 366, 372; *Cooper v. Ind. Transfer, etc., Co.*, 52 Ida. 747, 756; *Page v. State Ins. Fund,* 53 Ida. 177, 186; *Pierstorff v. Gray's Auto Shop,* 58 Ida. 438, 443; *Brink v. H. Earl Clack Co.*, 60 Ida. 730, 739.)

At common law, to unlawfully knock out one's "front tooth" constituted the crime of mayhem (4 Blackstone's Comm., 205; 2 Coke's Litt., 288a). Whether it falls within the definition of our statute defining mayhem (sec. 17-1301, I. C. A.) has never been determined, though at least one court (Texas) has held so as a matter of law. (*Keith v. State,* (Tex. Crim. App.) 232 S. W. 321, 16 A. L. R. 949.) At any rate, the teeth are, and always have been, considered a prime necessity and so important to humans that the possession of those furnished by nature is never voluntarily given up except from necessity, real or apparent.

It is contended, however, that the Workmen's Compensation Law does not provide, and was not intended to provide, for payment of *damages* to an injured workman; that it only intends to compensate him for loss of earning power. That is theoretically true. The act is bottomed on that principle but it includes more and was

clearly intended to do so. Sec. 43-902, I. C. A., which was sec. 1 (b), 1917 Sess. Laws, chap. 81, provides, inter alia:

"The common law system governing the remedy of workmen against employers for injuries received in industrial and public work is inconsistent with modern industrial conditions." (See, to same effect, sec. 70-102, I. C. A.) Sec. 43-902, *supra*, declares the *purpose and policy of the act.* It further says:

"the state of Idaho, ... declares that *all phases* of the premises are *withdrawn from private controversy,* and sure and certain relief for injured workmen and their families and dependents is hereby provided *regardless of questions of fault and to the exclusion of every other remedy, ...* " (Italics supplied.)

It is apparent at once, from a reading of the statute, that the question, as to whether there was or was not any negligence on the part of any one, does not enter into the consideration of a claim for compensation by an injured workman. (*Close v. General Construction Co.,* (Ida.) 106 Pac. (2d) 1007; *Pierstorff v. Gray's Auto Shop,* 58 Ida. 438; *Dutson v. Idaho Power Co.,* 57 Ida. 386; *Skeen v. Sunshine Mining Co.,* 60 Ida. 741, 745.)

Since the legislature abolished every remedy, for *all injuries* (negligent and non-negligent) received by a workman "in course of his employment," it would seem to follow, as a natural, reasonable conclusion, that the lawmakers thought and assumed that every "injury" would impair the victim's usefulness in some degree, and that he should be, in some measure, compensated under the new remedy they were setting up by the compensation law. It appears self-evident, that the legislature did not mean to take from a workman his common law remedy for a negligent act of his employer, resulting in serious injury and damage to him, and give him no other remedy in lieu thereof.

The principle involved in our statutes was considered in *Sweeting v. American Knife Co.,* 123 N. E. 82, by Justice Cardozo, then a member of the Court of Appeals of New York, wherein the court had under consideration the question of awarding compensation to a workman who had suffered facial disfigurement by reason of an

injury to the bridge of his nose. It was contended that the injury did not impair the workman's ability to engage in any work that he had previously done and at the same wage or salary. In course of his discussion of the matter, Justice Cardozo said:

"The common law gave the workman compensation for pain and suffering, as well as for loss of earnings, when the employer was at fault. The statute takes that remedy away, and substitutes insurance within prescribed limits, irrespective of fault. . . . One cannot defeat a statute by a presumption that in its enactment the truths of life have been ignored. The presumption is, on the contrary, that they have been perceived and heeded. But one of the truths of life is that serious facial disfigurement has a tendency to impair the earning power of its victims. In some callings it would rule out altogether an applicant for employment. In most it would put him at a disadvantage when placed in competition with others. There may, of course, be individual instances of disfigurement without impairment of earning power. That is true also where there has been the loss of a finger or a foot or an eye. Lawmakers framing legislation must deal with general tendencies. The average and not the exceptional case determines the fitness of the remedy. . . . The mutilated face, like the mutilated arm or leg, is the capital fact upon which liability depends. The injury alone, without other proof of loss, makes out the claimant's handicap in the struggle of existence. Given the fact of injury, the commission is to assess the damages. The presumption is that all relevant circumstances have been weighed in the assessment. . . . The award is not redress for a tort. It is an allotment to an insured workman of his proportion of a fund maintained for his insurance. *Mountain Timber Co. v. Washington, supra,* 243 U. S. at page 235, 37 Sup. Ct. 260, 61 L. ed. 685, Ann. Cas. 1917D, 642. Nor does the statute become invalid because the commission has some discretion in fixing the amount. The Legislature may provide for such a method of 'adjustment, determination and settlement' as it will. There is reason for the distinction which it has drawn between facial disfigurement and other injuries, though the reason is hardly our

concern. Some injuries, as for instance the loss of a limb, may be so defined and classified that the appropriate compensation may, with a fair average of justice, be estimated in advance. But cases of disfigurement have their special problems. It is difficult, if not impossible, to define and classify the injuries. A flexible compensation makes for justice alike to employer and to workman. It is not important that a lump payment is exacted." (See, also, *Beal v. El Dorado Refining Co.,* (Kans.) 296 Pac. 723, 727.)

To deprive one of his front teeth (or any, for that matter) against his will, requires no further proof that he has suffered an injury; *the thing speaks for itself,*— whereas he had teeth, now he is involuntarily without them,—they are gone without his consent, and he must go his way through the remainder of his life, toothless, or get himself some store teeth, which may either improve or impair the appearance of his physiognomy; but if he procures himself manufactured teeth, he will assume the lifetime burden of attending to them, repairing and keeping them in sanitary and good-running condition. Moreover, we have it on judicial authority (*Mabee v. Anthony, infra*), that they sometimes make "uncanny noises" and occasionally cause involuntary offense. Why, then, should the board or court refuse to say, as a matter of law, what everybody else knows as a fact, that the loss of teeth is a substantial physical impairment?

For example; suppose, in course of a workman's labors, acids or poisons of some kind are spilled on a workman's head and, as a result, he loses a fine shock of hair,—his pet pride and the admiration of his friends, and the hair bulbs or matrices are permanently destroyed; still he could do as much and as good work as ever; yet he must go through life with a shiny, bald pate, exposed to every vagrant breeze that blows, and the social (and sometimes malicious) gibes of friends, to his constant discomfiture. Is he too not injured? Is he to have no compensation for something invaluable to him and yet what money can not buy? Who would be bold enough to assert that he looked *just as well* under a wig or toupee? Moreover, while not

precluded, he would, nevertheless, be permanently handicapped in seeking some kinds of employment.

The courts of Texas, Oklahoma, Missouri, Kansas and Pennsylvania have had occasion to deal with the subject of disfigurement, and particularly loss of teeth. So far as we have been able to discover, the only material difference between their statutes and ours is that some statutes specify certain kinds of disfigurement and fix the maximum sum that can be awarded by the board or commission for such disfigurement, but otherwise leave the amount to the *discretion of the board or commission*, to be measured in comparison with other or similar injuries. (*Close v. General Construction Co., supra.*)

In Texas, where as elsewhere they sometimes get teeth knocked out, the court had occasion to discuss the statute applicable in such cases and, in *Keith v. State of Texas*, (Tex. Crim. Rep.) 232 S. W. 321, 16 A. L. R. 949, held: "that a front tooth was a member of the body within the comprehension of the maiming statute," which makes it maiming to cut off, or deprive a person of, a member of his body. The court there held that to knock out a "corner tooth" or "front tooth" amounted to depriving one of a "member" of his body, as that term is used in the Texas statute.

In *Mabee v. Anthony*, 8 Pac. (2d) 22, 80 A. L. R. 968, a claimant had lost two front teeth and the question arose before the Oklahoma court, as to whether he was entitled to recover compensation under the Workmen's Compensation Law. The contention was made there, as here, that, since the employee had been fitted out and equipped with brand new false teeth and his appearance was not impaired, and his earning capacity was still the same, he was therefore not injured and should not recover. The supreme court affirmed an order allowing compensation for loss of teeth and, in the course of the opinion, said:

"The loss of teeth has been treated as a disfigurement generally, but here it is claimed that the dentist repaired and gave some artificial teeth and that that cured the matter, though there does not seem to be anything shown here to indicate that the employer or the insurance carrier ever paid for the repairs.

"So valuable during all of our legal history has been a front tooth that the great commentator on English Law, Blackstone, described a very serious crime as 'mayhem,' which among other things was the knocking out of a front tooth." (See, also, *Bell Oil & Gas Co. v. State Indus. Comm.,* (Okla.) 211 Pac. 1042.) *Mabee v. Anthony, supra,* was followed and approved by the same court in *Skelly Oil Co. v. Skinner,* 19 Pac. (2d) 548. In the latter case the court quoted from and approved both the Betz and Odom cases, *infra.*

In *Odom v. Atlantic Oil Producing Company,* 110 So. 754, 755, the Louisiana court said:

"The fact that the teeth may be, and in this instance were, replaced does not wholly remove the disfigurement or the impairment, or the seriousness of either, though it lessens it."

In *Betz. v. Columbia Telephone Co.,* 224 Mo. App. 1004, 24 S. W. (2d) 224, 229, the court said:

"The loss of 31 teeth is a serious handicap to any one. It is a severe mutilation and permanent disfigurement. To say otherwise is to speak contrary to nature. No one could be so devoted to the practical and artificial as to claim for 'store teeth' equal advantage with the sound and natural incisors and molars. If there be such a one, we apprehend that time holds for him certain and complete disallusionment."

The Missouri statute is substantially the same as ours except that it fixes the maximum allowance for disfigurement "based upon the handicap suffered by the injured employee in obtaining employment." (Sec. 3315 (a), Mo. Laws 1925; 3 Schneider's Workmen's Comp. Stat., p. 1909.) In the Betz case, *supra,* the court said:

"There is no complaint as to the sufficiency of evidence to support the finding, except that it fails to show a loss of earning power. We have concluded that this is unnecessary. However, it would be an entirely reasonable inference from the evidence in this case that the result of plaintiff's injury is to cause a loss of earning power. The mere fact that his employer retained him at his previous wage is not at all conclusive that his physical impairment has not resulted in a loss of earning power when tested

by a sale in an open market. The plaintiff in this case had served his employer for practically a quarter of a century, and there were ample reasons for his retention at the same wage, independent of the actual value of his then earning capacity. Claimant could not chew his food and as a consequence suffered stomach trouble.

"Even though it be considered, necessary to show a loss of earning power, we think that the inferences which may be drawn from the evidence would be sufficient to support the conclusion and the award of the commission, if actually placed upon that basis. The appellate court will consider only the evidence most favorable to the claimant and all inferences which may be drawn therefrom to support the conclusion of the commission. Section 44, Workmen's Compensation Act, Laws of Missouri 1927, p. 512; *Cotter v. Valentine Coal Co.,* (Mo. App.) 14 S. W. (2d) 660."

In *Muchnick v. Susquehanna Waist Co.,* 188 Atl. 413, 415, the Pennsylvania court had under consideration a similar question and, among other things, said:

"It must be conceded that the loss of two front teeth and the chipping of a third front tooth is a disfigurement of the head or face, a deformity; defacement, or blemish, that it is not usual to the employment in which claimant was engaged, and that such injuries to the teeth of an adult are permanent. Consequently, the controlling question involved here is whether the court may say as a matter of law that there was not any evidence to support the finding of the board that the disfigurement was serious, weighty, and important as opposed to light and trifling. We have no doubt that, if average persons were asked whether they would classify the loss of two front teeth as important or trifling, the vast majority would refuse to classify the loss or blemish as trifling. . . . As Blackstone points out (4 Bl. Comm. 205), mayhem was held to include 'striking out his eye or foretooth.' . . . It is true that we are here dealing with the loss from the standpoint of facial disfigurement, but the analogy remains. Even though the loss may be minimized by the substitution of false teeth, the appearance in most cases is still affected. The conclusion at which we have arrived

is in harmony with that reached in other jurisdictions. See note to the case of *Mabee v. Anthony,* 80 A. L. R. 968, 979, where many cases are cited."

The seeking and procuring of future employment, after an injury, is not confined to the kind of work the injured employee was pursuing at the time of the accident. The law does not close the door of opportunity to a workman, when he enters some employment, so that he can not aspire to, and seek, some other or better job. In the present case the young man, only 18 years of age, was no doubt working to procure the money with which to continue his education; at any rate, he entered the university shortly after the accident, as he had a right to do. At the time of the trial of this matter, he had already discovered that the loss of his teeth rendered him ineligible to enlistment in the navy.

It is urged that, since no evidence is introduced as to just the degree to which he is disabled or disqualified from obtaining employment, the board is without any means or standard by which to determine any allowance to be awarded. The same objection might be urged with equal force against various classes of injuries for which compensation is awarded, and which have not been enumerated in the schedule, or any standard fixed more definite than that above quoted from sec. 43-1113, I. C. A., to the effect that "In all other cases" the award shall bear such relation to the amount stated in the above schedule as the disabilities bear to those produced by the injuries named in the schedule." (See, for analogy, *Close v. General Const. Co.,* (Ida.) 106 Pac. (2d) 1007, 1009; *Barry v. Peterson Motor Co.,* 55 Ida. 702, 706.)

In the Close case, *supra,* we held that the statute provides for "comparable indemnities for other cases not enumerated." It was also said in that case that "The legislature must have intended, in fixing this schedule of indemnities, to take into consideration . . . all these elements," including "pain and suffering."

The order is reversed and the cause is remanded to the Board, with instructions to take such further proceedings as may be in harmony with the views herein expressed and, if deemed necessary, to take further proofs as to com-

parable injuries and percentage of partial disability. Costs to appellant.

Budge, C. J., Givens and Holden, JJ., concur.

MORGAN, J. (Dissenting)—The Industrial Accident Board of the State of Idaho is not a court of general jurisdiction. It is an administrative board the jurisdiction of which is limited, not only by the statute which brought it into existence, but by the constitution which limits the legislature in conferring powers on administrative boards.

Idaho Constitution, Art. II (which has but one section) is as follows:

"The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

There is nothing to be found in the constitution expressly authorizing administrative boards to entertain jurisdiction of, and try actions for, damages arising out of personal injuries.

Article V, sec. 13, has this provision:

"The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government; * * * "

Article V, sec. 2, vests the judicial power of the state in the courts, and names them, as follows:

"The judicial power of the state shall be vested in a court for the trial of impeachments, a Supreme Court, district courts, probate courts, courts of justices of the peace, and such other courts inferior to the Supreme Court as may be established by law for any incorporated city or town."

The foregoing constitutional provisions leave no room for a contention that the legislature has power to invest an administrative board with jurisdiction to try actions

for damages arising out of personal injuries. Furthermore, the workmen's compensation law does not attempt to do so. It provides for compensation for two classes of injuries by accident arising out of, and in the course of the employment of workmen, causing partial disability.

Section 43-1113 provides specific indemnities, for members of the body therein specified, regardless of whether the injury results in loss of earning capacity or not. After listing, in detail, the members of the body, loss of which will entitle the workman to indemnity, and fixing the amount, the section provides:

"In all other cases in this class compensation shall bear such relation to the amount stated in the above schedule as the disabilities bear to those produced by the injuries named in the schedule."

The loss of teeth does not appear in the schedule, and the detail with which the loss of members of the body entitling the loser to compensation is stated, convinces me that, had the legislature intended to provide for compensation for loss of teeth, it would have mentioned them as it did arms, legs, fingers and toes and their joints, eyesight and hearing. The section of the statute, applicable to the facts of this case, is 43-1112 relating to partial disability. It contains the following provision:

"Where the injury causes partial disability for work, the employer, during such disability and for a period not exceeding 150 weeks, shall pay the injured workman a weekly compensation equal to fifty-five per cent of the difference between his average weekly wages before the accident and the weekly wages he is able to earn thereafter, * * * "

I am not in accord with the theory that the legislature intended to provide, in the workmen's compensation law, for compensation for pain and suffering, or for disfigurement which does not cause loss of earning capacity. The legislature recognized, and anticipated, that accidents would occur to workmen which would not be compensable pursuant to the act. Chapter 10 entitled, "RIGHTS AND REMEDIES GRANTED AND AFFECTED BY WORKMEN'S COMPENSATION LAW," commences with sec. 43-1001, which is:

"If a workman receives personal injury by accident arising out of and in the course of *any employment covered by this act* his employer or the surety shall pay compensation in the amounts and to the person or persons hereinafter specified." (Emphasis added.)

Section 43-1003 contains this provision:

"The rights and remedies herein granted to an employee on account of a personal injury *for which he is entitled to compensation under this act* shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury." (Emphasis added.)

The legislature never intended that an employee should receive compensation, pursuant to the workmen's compensation law, for an injury, such as that suffered by claimant here, unless it affected his earning capacity, and it limited recovery by those whose earning capacities were diminished by their injuries, to the amounts in the statute specified. The workmen's compensation law does not interfere, in any way, with the right of appellant to recover damages in a court having jurisdiction of such actions, if any are due him, because of injuries suffered due to the negligence of his employer.

The industrial accident board found, from undisputed evidence:

"That the claimant lost no time in his employment on account of said accident and that he continued working for the defendant until the 5th day of October, 1940, when he voluntarily ceased his work and matriculated as a student in the University of Idaho, Southern Branch, specializing in the subject of chemistry and is now a student in said institution."

The board was right in denying compensation, and its order, to that effect, should be affirmed.